WALSH, Administratrix, Appellant, *v.* BUTTE, ANA-
CONDA & PACIFIC RY. CO., Respondent.

(No. 7,886.)

(Submitted November 12, 1939.   Decided December 13, 1939.)

[97 Pac. (2d) 325.]

*Mr. Earle N. Genzberger* and *Messrs. Emigh & Murray*, for Appellant, submitted a brief; *Mr. Genzberger* and *Mr. J. F. Emigh* argued the cause orally.

*Messrs. W. H. Hoover, John V. Dwyer* and *Mr. J. T. Finlen*, for Respondent, submitted a brief; *Mr. Finlen* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action by the administratrix for damages for the death of William E. Stevens, alleged to have been caused by the negligent acts and omissions of defendant. The jury found for plaintiff in the sum of $37,500. Defendant filed a motion for new trial on all the statutory grounds. The motion was granted by a general order giving no intimation as to what particular ground or grounds furnished the basis for the order. One óf the grounds of the motion was newly discovered evidence, but since no affidavits were offered showing any new evidence, that ground of the motion was, in effect, abandoned.

The question before us is, Did the court abuse its discretion in granting the new trial? If we hold that it did not and that a new trial is proper, then plaintiff desires that certain questions be passed upon which will be certain to arise upon the new trial.

Defendant, without taking a cross-appeal or making any cross-assignment of error, argues that the court should have granted its motion for a directed verdict on the ground of its freedom from negligence, and on the ground that the decedent's death was shown to have been caused by his own contributory negligence, and that, in consequence, instead of remanding the cause for a new trial, we should order its dismissal.

So much of the facts of the case as we deem important will be recounted when considering the law point to which they are pertinent. In considering the question whether the court erred in granting a new trial we keep in mind the rule, well settled by the decisions of this court, that granting or

denying a new trial is a matter that rests in the sound discretion of the trial court, and its order will be reversed only for manifest abuse of discretion. (*Maki* v. *Murray Hospital*, 91 Mont. 251, 7 Pac. (2d) 228, and cases therein cited; *Brennan* v. *Mayo*, 100 Mont. 439, 50 Pac. (2d) 245, 248.) In the *Brennan Case* the court quoted with approval the following language used in the case of *Bull* v. *Butte Elec. Ry. Co.*, 69 Mont. 529, 223 Pac. 514: " 'It has become axiomatic in this jurisdiction, and elsewhere, that, where the evidence is conflicting, the order of the trial court granting or refusing a new trial will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. The rule and the reason for it have been stated so often that a citation of authorities is unnecessary. * * * And, while the parties are entitled to the judgment of the jury in reaching a verdict in the first instance, upon motion for a new trial they are equally entitled to the independent judgment of the court as to whether the verdict is supported by the evidence.' " And an order granting a new trial will not be set aside by this court as readily as one denying it. (*Maki* v. *Murray Hospital*, supra.)

Keeping in mind these rules, we cannot say from the record that the court abused its discretion in granting a new trial; hence plaintiff's contention that we should set aside the order and affirm the judgment cannot be sustained.

We shall now briefly review the evidence for the purpose of determining whether the court should have gone further and dismissed the action. Treatment of this question will incidentally answer some of the questions likely to arise on a new trial. As to the pleadings it may be said that plaintiff bases her right to recover upon negligence on the part of defendant in backing a train over a street crossing without warning of its approach; that there was no light on the rear car as required by a city ordinance pleaded in the complaint; that the company maintains two sets of gates at the crossing in question, one set on each side of the railroad tracks, in charge of a gateman, each set of gates consisting of two long vertical moving arms, one on each side of the street, which, when lowered, covered the

whole of the street; that defendant failed to lower the gates in time to avoid the collision, and that it failed to have an arc light over the crossing as required by ordinance. Defendant denied that it had been guilty of negligence and pleaded contributory negligence on the part of Stevens. It alleged that the crossing gates had been and remained lowered during the time when Stevens traveled the last 300 feet before reaching the crossing, and that the whistle was blown and the bell rung as the train approached the crossing.

It is the contention of defendant that there is no evidence tending to show negligence on its part, and that the evidence establishes that the collision was due to negligence on the part of Stevens. The cause of action arose, as shown by the pleadings and evidence, out of a collision between an automobile driven by Stevens and defendant's train at an intersection of defendant's railway tracks and Montana Street, the center line of which marks the west boundary of the city of Butte. The accident occurred on February 25, 1936, at about 7:30 in the evening.

On behalf of plaintiff there was but one witness who testified to material points. That witness was Romeo Campeu, who was riding in the automobile with Stevens at the time of the collision. The substance of his testimony was that he had invited Stevens to his house for dinner on the evening in question, and that before going to dinner Stevens desired to go, and did go, to Turpin's place on South Main Street, to see about selling a safe; that they remained at Turpin's place for about an hour and then went up Montana Street; that it was dark and a little foggy; that they were proceeding northward on the right hand or east of the center line of the street; and that on the east side of the street "there are a lot of sign boards, two or three big ones that I know of, and further up is a filling station with pumps in front and a light on one or two of the pumps which obstructed you considerable." He further said that as they were about opposite the Milwaukee depot, which was shown to be just below Second Street, they had seen the train go by going east. The crossing gates then went up; as they were

close to or past Second Street they were traveling about 15 or 20 miles per hour; as they approached the railroad crossing he heard neither bell nor whistle and saw no lights on the train; when about 10 or 12 feet on the south side of the crossing gate or arms, they suddenly came down and hit the car; that the car proceeded onward and struck the train which was then backing westward over the crossing. He did not see any brakeman or flagman on the rear end of the train, which consisted of black ore cars. He did not see the train until the gate started to come down. He said: "I don't know how far the gates are from the track; my judgment is probably 5 or 6 feet, but I am not sure on that." When asked where the most westerly portion of the train was as the gates began to come down, he replied that he did not know. When asked, "Was it all across the intersection?" he replied, "The train just beginning to come apparently." Asked whether it was the first or second car that was on the crossing when he first saw the train, he said he did not know which it was "but it was the front portion of the train, the front going west."

The evidence introduced by defendant will not be reviewed here. It is sufficient to say that the evidence is in sharp conflict, if that of plaintiff be sufficient to raise a conflict. Defendant produced several witnesses whose testimony was to the effect that Stevens ran into the gates which had been lowered long before he reached the crossing. However, if the evidence submitted by plaintiff is not so improbable, self-contradictory or contrary to the physical facts as to be unworthy of belief, it matters not how many witnesses testified to the contrary, the case must still go to the jury. (*Hill* v. *Haller*, 108 Mont. 251, 90 Pac. (2d) 977.)

Defendant contends that the testimony of Campeu should be disregarded as contrary to the physical facts. We do not so view his testimony. Much is made of the fact that if Campeu saw the train as it passed the crossing going east when he said he did, it could not have stopped and reversed its course in time to get to the crossing when it did. The fact remains that it was at the crossing when the collision occurred. It is

undisputed that it got there by backing up, and it is undisputed that immediately prior to backing up it had passed eastward over the crossing. As to when Campeu first saw the train going eastward, or whether he saw it at all at that time, is a collateral matter and his statement in that regard should not be seized upon as a reason for condemning all of his testimony. (Compare *Hill* v. *Haller*, supra.)

The evidence is in sharp conflict as to whether the arms of the gates were up or down as Stevens approached the crossing. Campeu's testimony that they were up and were suddenly dropped when the automobile was within 10 or 12 feet thereof, made the question one of fact for the jury.

Defendant contends that the moving train on the track was it- self a warning of danger, and that Stevens must necessarily be held to have been guilty of contributory negligence in running into it. On this point we have these facts conceded in defendant's answer: "and that at and during all of the times hereinafter and in said complaint mentioned there existed permanent structures and monuments, including signboards and buildings, situated easterly from and adjoining said Montana Street so that the view of any person driving or operating an automobile or other vehicle in a northerly direction along said street and toward said intersection would momentarily and at times be obstructed when such vehicle and person were within the last two hundred feet of approach to said intersection or crossing so that such person could not have, during such times, a clear and uninterrupted view of trains or other traffic on the aforesaid railway for a distance of four hundred (400) feet easterly from said crossing." Additionally there is evidence that the weather was foggy. It was dark and the train was painted black. In view of these circumstances, coupled with the fact that there was evidence that the gates were up, the question of Stevens' contributory negligence was for the jury.

The case is controlled on this point by the case of *Jarvella* v. *Northern Pac. Ry. Co.*, 101 Mont. 102, 53 Pac. (2d) 446, 451, where plaintiff was held not guilty of contributory negligence,

as a matter of law, for driving into a train standing on a crossing. In that case this court said: "As we understand defendant's further contention, it urges that any one who collides with a stationary train of cars on a crossing—a stationary train of cars on a crossing being itself a warning—is of necessity guilty of contributory negligence. Many cases may be found in the books holding, under varying circumstances, that plaintiffs colliding with a slowly moving train of cars or a train of cars which had been stopped on a crossing are guilty of contributory negligence. On the other hand, other cases under facts somewhat similar to those in question hold that the question of contributory negligence is one of fact for the jury. It was so held where the question was raised on the pleadings in the cases of *Central of Georgia Ry. Co.* v. *Heard,* 36 Ga. App. 332, 136 S. E. 533, and *Elliott* v. *Missouri Pac. Ry. Co.,* 227 Mo. App. 225, 52 S. W. (2d) 448; and a like result was declared where the question arose, as here, on a motion for nonsuit or directed verdict, in the cases of *Nashville, C. & St. L. Ry. Co.* v. *Nall,* 236 Ky. 554, 33 S. W. (2d) 640, *Spiers* v. *Atlantic Coast Line R. Co.,* 174 S. C. 508, 178 S. E. 136, and *Short* v. *Pennsylvania R. Co.,* 46 Ohio App. 77, 187 N. E. 737. (See, also, Blashfield's Cyc. Automobile Law, Perm. Ed., vol. 3, p. 210.) We conclude that the question of contributory negligence was properly submitted to the jury.

The case of *Inkret* v. *Chicago, Mil., St. P. & P. R. Co.,* 107 Mont. 394, 86 Pac. (2d) 12, is quite similar to this, but in that case the driver of the automobile struck the train which was about 2,000 feet in length at about its center. Hence the train in that case was on the track as the automobile approached the crossing. Here it is conceded that the train had not proceeded over the highway crossing until about the same moment the automobile reached the crossing. Hence a driver looking straight ahead would not have seen it until in close proximity to it. Under such circumstances and when it is remembered that the open gates—and the jury was warranted in finding that they were open—constituted an invitation to proceed and an assurance that the track could be crossed in safety, the de-

464

gree of vigilance required of Stevens was greatly cut down. (*Palmer* v. *New York Cent. & H. R. R. Co.*, 112 N. Y. 234, 19 N. E. 678; Elliott on Railroads, 2d ed., par. 1157; *Pennsylvania Co.* v. *Stegemeier*, 118 Ind. 305, 20 N. E. 843, 10 Am. St. Rep. 136.)

We cannot say that Stevens was guilty of contributory negligence, as a matter of law. The question was one for the jury.

It was pleaded in the answer and attempted to be proven at the trial that the deceased was intoxicated at the time of the accident. Officer Duggan testified that the deceased was "drunk," that he could smell liquor at the scene of the accident, and that at the hospital deceased made the statement, "Well I went out to get drunk and I got good and drunk." The deputy sheriff testified that "he looked to me like he was in an intoxicated condition." A retired police officer testified that the deceased said, "We went out to get drunk; we got good and drunk." A witness who was at the scene of the accident said that both Stevens and Campeu were in an intoxicated condition. Another witness who saw the deceased and Campeu at the hospital said the deceased was under the influence of liquor. On the plaintiff's behalf, Campeu denied that they were drunk and stated that each had only two glasses of beer at Turpin's place prior to the accident. There was evidence to the effect that the radiator of the automobile was filled with a solution of alcohol and that the smell of liquor came from the broken and leaking radiator. The nurse who administered to the deceased when he was admitted to the hospital testified that she had occasion to observe whether he was drunk or sober, and determined that he was not a drunken man at the time, and said that if there had been liquor odor on his breath she would have noticed it. Dr. Gold testified that it was a customary practice in 1935 and 1936, when he was on the hospital staff, when a patient was admitted in a drunken condition to note the same on the chart. The charts produced indicated no notation as to drunkenness. The witnesses for the defendant who observed the deceased at the time of the accident based their conclusion of drunkenness in part on the actions of the deceased

relative to his physical mobility. Dr. Gold testified that extreme shock would produce symptoms which would be similar to those of drunkenness. On the issue of drunkenness it is thus seen that the testimony as a whole was in sharp conflict.

The claim that drunkenness of Stevens bars recovery, as a matter of law, cannot stand for two reasons: First, the evidence on the fact of drunkenness was conflicting and hence for the jury; and second, if the jury found drunkenness it could not conclude that there was no liability, unless it also found that drunkenness was the proximate cause of the injury and death. On the supposition that the evidence upon another trial will be substantially the same as at the previous one, the case will be one for the jury, and therefore the action should not be dismissed but tried anew. Other questions likely to arise on a new trial will now be considered.

Was the testimony of Campeu that he did not hear a whistle or a bell sufficient under the circumstances to raise an issue with respect to those matters? The defendant requested two instructions, numbered 35A and 36A, which were designed to withdraw from the jury's consideration the issue raised by the pleadings with relation to defendant's failure to ring a bell or blow a whistle. The offered instructions were refused and the court permitted the issue to go to the jury.

The question arises whether the negative testimony of Campeu was sufficient to make out a prima facie case that no bell was rung and no whistle blown. Campeu testified that the window of the automobile on the side on which he was sitting, and which was also the side toward which the locomotive was located, was open and that he heard neither whistle nor bell. This evidence was sufficient to make out a prima facie case that the whistle was not blown and the bell was not rung. (*Riley* v. *Northern Pac. Ry. Co.,* 36 Mont. 545, 93 Pac. 948; *Walters* v. *Chicago etc. Ry. Co.,* 47 Mont. 501, 133 Pac. 357, 46 L. R. A. (n. s.) 702.) The attendant circumstances were such that had a whistle been blown or had a bell been rung, which would have served as warnings to those entitled thereto, he would have heard it within the rule stated in *Rau* v. *Northern Pac. Ry. Co.,* 87 Mont. 521,

466

289 Pac. 580, and *Sullivan* v. *Northern Pac. Ry. Co.*, ante, p. 93, 94 Pac. (2d) 651. Moreover, the only whistle claimed by defendant to have been blown and the only bell claimed to have been rung were those from the engine which was about four blocks east of the crossing in question. This was not any evidence that an adequate warning was given of the approach of the train backing onto the crossing. Offered instructions Nos. 35A and 36A were therefore properly refused. Campeu's testimony was sufficient to make out a prima facie case that no whistle was blown and no bell rung which could be considered as a warning of the approach of the backing train.

The court gave Instruction No. 19A, reading: "You are instructed that the court withdraws from your consideration all question of the alleged failure of the defendant to install and maintain a light at the crossing in accordance with Ordinance No. 812 of the Ordinances of the City of Butte, Montana, and you are, therefore, to reach your verdict in this case without consideration of such question." The reason for this instruction is because the center of the intersection of Montana Street at the railroad crossing was shown to be 2.7 feet outside the city limits, and therefore the ordinance requiring a light had no application. This instruction should not have been given. The collision concededly occurred within the city limits. The purpose of the ordinance was to have the street lighted for the benefit of the general public using the street. While the ordinance had no application outside the city limits, yet it was incumbent upon defendant to meet its requirements within the city. To do so it was incumbent upon defendant to have that part of the street situated within the city limits lighted.

Suggestion is made by plaintiff that we should overrule the statement appearing in the *Inkret Case,* supra, which seems to her to overrule the rule of the case of *Walters* v. *Chicago, Mil. & P. S. Ry. Co.,* 47 Mont. 501, 133 Pac. 357, 46 L. R. A. (n. s.)

702.   The *Inkret Case* does not overrule the *Walters Case.*   The rule in Montana still is as announced in the *Walters Case.*

The order granting a new trial is affirmed.

Mr. Chief Justice Johnson and Associate Justices Morris, Erickson and Arnold concur.