GARRISON, Respondent, *v.* TROWBRIDGE, Appellant.

No. 8692

Submitted January 10, 1947. Decided February 11, 1947.

177 Pac. (2d) 464

Mr. H. B. Hoffman and Mr. L. W. Paul, both of Great Falls, Montana, for appellant.

Mr. E. J. Stromnes and Messrs. Swanberg & Swanberg, all of Great Falls, for respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the Court.

This is an appeal from an order granting a new trial.

The action is to recover damages for the death of David Garrison who was killed as a result of being struck by an automobile alleged to have been negligently driven by defendant at an intersection of two streets in the city of Great Falls.

Verdict and judgment were in favor of defendant. The motion for new trial was based upon the following grounds:

"1. Irregularity in the proceedings of the court, jury and adverse party by which plaintiff was prevented from having a fair trial;

"2. Insufficiency of the evidence to justify a verdict and that the verdict is against law;

"3. Error in law occurring at the trial and excepted to by plaintiff herein."

In considering the propriety of the court's ruling in granting the new trial, we keep in mind that, "The granting, or refusal to grant, a motion for a new trial lies within the sound

discretion of the trial court, and its order thereon will be reversed only for manifest abuse of that discretion. * * *

"An order, general in its terms, granting a new trial, will ▉ be upheld if it can be sustained on any ground stated in the motion therefore, and such an order will not be set aside as readily as an order denying a new trial, since the latter ends the case, whereas the former merely restores the parties to the position they occupied before the trial." Maki v. Murray Hospital, 91 Mont. 251, 260, 7 Pac. (2d) 228, 230. To the same effect is Walsh v. Butte, Anaconda etc. R. Co., 109 Mont. 456, 97 Pac. (2d) 325. A stronger showing is required to justify interference with an order granting than one refusing a new trial. Collins v. Hodgson, 5 Cal. App. (2d) 366, 42 Pac. (2d) 700.

The evidence was to the effect that David Garrison, a man about 77 years of age, left his home on 5th Avenue North in Great Falls shortly after six o'clock p. m. on January 14, 1945, and started to walk toward the business section of the city. He was walking on the east side of 4th Street North and going in a southerly direction. As he was crossing the intersection of 4th Street North and 2nd Avenue North, he was struck by defendant's automobile near the southeast corner of the intersection. Witnesses varied in their testimony as to the exact distance Garrison was from the south line of 2nd Avenue North when he was struck. This variation ranged from four to seven feet. The automobile approached from the west and was traveling eastward. Garrison was taken to the hospital and died on the following day.

The issue between the parties was whether the death was due to negligence on the part of defendant as contended by plaintiff or to the contributory negligence of Mr. Garrison as contended by defendant.

Defendant in his answer alleged that David Garrison did not exercise proper care for his own safety in several respects and particularly in that he had formed and established a fixed habit of walking with his eyes downcast upon the surface im-

mediately before him and without looking to his right or left and without due care as to hazards from traffic.

Evidence as to the habit or custom of deceased of walking in ██ a stooped position and with his eyes apparently focused upon the ground immediately in front of him was introduced without objection. Plaintiff contends that evidence of the habit or custom of the deceased was inadmissible. As above noted, that issue was presented by the pleadings and all the evidence on the point went in without objection and hence no error can be predicated on that account.

At the time of the accident resulting in his death, Mr. Garrison was living with his daughter, Ida Williams. She testified that prior to the accident he was of good health; that his eyesight and hearing were good and he was a hearty eater; that he was "stooped from the shoulders" and walked in a stooped position.

On cross-examination counsel for defendant asked her whether she did not at a stated time and place say to Mrs. Kaiser that "I know something is going to happen to dad some day." Objection to this was made by plaintiff and the objection sustained. Practically the same question was again repeated and the objection sustained. Practically the same question was repeated the third time, but related to a different time and place and the objection was again sustained.

On redirect examination plaintiff's counsel elicited the fact that each year she noticed Mr. Garrison was getting slower in his walk but his steps were still firm. Mrs. Williams also testified on redirect examination as follows:

"Q. Did your father have a stiff neck? A. No. Q. Was there any reason why he could not look from side to side as he walked? A. No reason whatsoever. Q. Did he customarily, in his walk, look from side to side? A. When the occasion arose, I imagine he did and when it was necessary."

Counsel for defendant then took the view that the door was opened for the testimony sought to be elicited concerning the statement claimed to have been made to Mrs. Kaiser and was

permitted over plaintiff's objection to ask the following question:

"Q. Recasting the questions, to come within the Court's ruling, I will ask you whether or not you did not, about two weeks after the accident, at the switchboard at the East Air Base, say to Mrs. Kaiser, when only you and she were talking together in conversations, and in the hearing of only you and she or the hearing of you and her, in substance and effect, 'I knew something would happen to dad, the way he walked.'" Mrs. Williams answered the question by saying: "I made no such statement. It would be foolish for me to make such a statement." He then propounded the following question: "I will ask you whether it is not a fact that you frequently made that statement to Mrs. Kaiser on other occasions, that you felt sure or was afraid something would happen to dad the way he walked?" Objetion to the question was overruled and she answered: "I never made any such statement at any time."

Mrs. Kaiser was then called as a witness by defendant and was asked about a remark made by Mrs. Williams to her prior to the accident. This was objected to and the objection was sustained.

The court then stated: "The only impeaching question was the one you put after the death."

Thereupon she was asked the following question: "Q. You may state to the jury whether or not, about two weeks after the accident, at the switchboard, when you and Mrs. Williams were working at the switchboard, in a conversation which you had with Mrs. Williams and in the hearing of only you and Mrs. Williams, she did not state to you in substance and effect: 'I knew something would happen to dad the way he walked'?" She answered: "That is true. That is right, she made that statement." No objection was made to the last question. However, the court had already indicated that this question was proper for impeachment purposes as to the statement made after the death. Plaintiff contends that the court was in error in allowing the question to be answered by Mrs. Williams on

cross-examination as to whether she made the statement in question. This contention must be sustained.

The question of the contributory negligence of decedent depends upon his conduct and actions at the time in question and not upon what some one else may have prophesied owing to his conduct at some other time. Were this evidence admissible then statements made by back seat drivers, no matter how remote in point of time, would be admissible to prove that the driver of a car was negligent at a given time and place though the statement was made by one who was nowhere near the scene of the acident and knew nothing about it.

The evidence introduced on direct and redirect examination of Mrs. Williams did not open the door for cross-examination relative to the statement claimed to have been made by her. Her alleged assertion that she knew something would happen to dad the way he walked is but a conclusion that might be applied to any one no matter how careful, nor did it refute the statement made by her that she imagined that deceased customarily looked from side to side when the occasion arose or when it was necessary. Also the court erred in permitting Mrs. Kaiser to relate the contents of the statement claimed to have been made by Mrs. Williams because evidence by way of impeachmeint is not proper on a point not properly in evidence, or on a collateral matter. 70 C. J. pages 1046, 1120; State v. McConville, 64 Mont. 302, 209 Pac. 987, State v. Mott, 72 Mont. 306, 233 Pac. 602. Consequently it was error to receive in evidence over plaintiff's objection the statement alleged to have been made by Mrs. Williams placing her interpretation of the degree of careless habits of the decedent and that she expected he would at some future time meet with disaster on account thereof. Where habits and customs are admissible the fact of such habits and customs and not the witnesses' conclusions as to probable future consequences thereof is all that the court may allow in evidence. This statement having been erroneously admitted in evidence, the court was warranted in

finding that it was prejudicial and hence did not abuse its discretion in granting a new trial.

Furthermore, the court erred in giving instruction No. 15 reading: "You are instructed that all traffic, including pedestians, must, when they approach an intersection of a city street in the City of Great Falls, and Second Avenue North, the same being a through street, stop and look before entering such intersection for the purpose of crossing the avenue." To the giving of that instruction plaintiff objected upon the ground "that there was a complete lack of any evidence in the case upon which the giving of such an instruction can be predicated." The objection to the instruction should have been sustained. There was no evidence showing that deceased did not stop before entering the intersection. It is not proper to give an instruction on an issue concerning which there is no evidence. (53 Am. Jur. 455.)

The order appealed from is affirmed.

Mr. Chief Justice Adair and Associate Justies Choate, Cheadle and Metalf concur.

Rehearing denied March 6, 1947.