IVAN W. KYNETT, Executor of the ESTATE OF MAUDE MARGARET GADSDEN, Deceased, Plaintiff and Appellant, v. NEW MINE SAPPHIRE SYNDICATE, a Corporation, Defendant and Respondent.

No. 9991.
Submitted February 18, 1960. Decided March 17, 1960.
Rehearing denied April 6, 1960.
350 Pac. (2d) 361.

Hoffman & Cure, Great Falls, Oscar O. Mueller, Lewistown, for appellant. Orin R. Cure argued orally.

Charles Davidson, Great Falls, E. K. Cheadle, Billings, argued orally for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from an order granting a new trial. The order, or orders, granting such trial was made under these circumstances. The cause was tried by the court without a jury on July 24, 1957, and judgment, that the plaintiff have and recover from the defendant the sum of $29,317.42 with interest thereon from April 5, 1954, was entered on May 21, 1958.

On May 28, 1958, notice of motion for new trial was filed by the defendant. The notice was made upon the minutes of the court and upon affidavits, and on the same day, an order was made staying execution of the judgment pending determination of the motion for new trial. Counter affidavits were filed and on July 16, 1958, the motion was argued. On July 29, 1958, the court made an order granting a new trial in which it was recited "that the Court is of the opinion that the facts pre-

sented at the trial of the case were not sufficient to justify the decision of the Court and therefore the Motion of the defendant is hereby granted.'' On August 1, 1958, the court filed an amended order granting the motion for a new trial and deleting the grounds upon which it rested.

The action was for an account stated. The complaint was that on April 5, 1954, at Lewistown, Montana, an account was stated by and between the plaintiff and the defendant, by which there was ascertained to be due and owing the plaintiff from the defendant a balance of $29,317.42. The substance of the complaint, giving rise to the account stated, was that for many years prior to his death, one Charles T. Gadsden acted as agent of the defendant in the management of the latter's mining claims located in Judith Basin County, including the renting of same and collection of the rents; that in connection therewith he and his wife did valuable service for the defendant Corporation, and made loans of their private funds to and for the use and benefit of the defendant. The complaint also stated that Charles T. Gadsden died on March 11, 1954, and thereafter in probate proceedings in Fergus County, a decree was made distributing all of the personal property belonging to his estate to Maude Gadsden, his wife, and that one of the assets of the estate was set forth as the balance due on loans, advancements and services due Charles T. Gadsden and Maude Gadsden, his wife, by the defendant Corporation, the same being a balance from an accumulation of many years in the amount of $29,317.42, one-half of which was owned by Charles T. Gadsden, or the sum of $14,658.71, as a part of his estate. The complaint then alleges that on April 5, 1954, at Lewistown, an account was stated by and between the plaintiff, Maude Gadsden, and the defendant, by which a balance of $29,317.42 was ascertained as an account stated, no part of which had been paid.

It should here be stated that subsequent to the trial of the

action, Maude Gadsden died, and the executor of her estate has been substituted as plaintiff.

The answer denied the services of plaintiff, denied the loans, alleged payment in full, denied specifically that an account was stated, and denied that any sum was due and owing plaintiff from defendant. As an aside, at this point, we observe that during the trial and in oral argument before this court, the defendant admitted the services and admitted that some money was due and owing by defendant to plaintiff in spite of the categoric denials of the pleadings. The answer also contained affirmative matter and a cross-complaint, but no evidence was offered by defendant and these were waived. Therefore, the answer will be treated as raising the general issue.

The appellee is a Montana corporation. Its officers resided in London, England, until comparatively recently. It is the same corporation involved in Sidwell v. New Mine Sapphire Syndicate, 130 Mont. 189, 297 P.2d 299. Since that case, the ownership of the control of the corporation has changed hands. This change of ownership occurred after the alleged account was stated, but before this action was commenced. Sidwell, the same party involved in the previous case before this court, is now the controlling owner of the defendant corporation.

Maude and Charles Gadsden were originally from London, England, and were the defendant's agents for many years. They moved to the properties in Judith Basin County and managed the mining operations from 1903 until operations were discontinued. They loaned the corporation money, continued in charge of the properties after the mines closed, collected rents on grazing land, and were caretakers. The admitted debt to them of the Corporation rose steadily. Finally, one Chester McNair of Great Falls, an intimate friend of Gadsdens, visited in London in the spring of 1954, to discuss among other things with the directors of the Corporation its debt to the Gadsdens.

The evidence presents the question of whether the appellee Corporation is bound by the statement of its directors in meet-

ing assembled in the directors' room of the Corporation's fiscal agents, Chantrey. Button & Company, in London, March 30, 1954, to Gadsdens' agent, Mr. McNair, that the Corporation owed the Gadsdens a sum certain between $29,000 and $30,000, and the directors' promise that they would have their fiscal agents send a statement showing the amount due, which they did on April 5, 1954, showing the amount to be $29,317.42 as taken from the last audited balance sheet of December 31, 1953.

Beginning in 1903, all correspondence concerning the business between the Gadsdens and the appellee was had with Chantrey, Button & Company. In recent years, the Gadsdens had employed Oscar O. Mueller and authorized him to carry on and attend to the business and correspondence between appellant and appellee, all of which was done through Chantrey, Button and Company, who were charter or certified public accountants. The record discloses very intimate business relations between appellee and these accountants, such as directors' meetings of the Syndicate (appellee) which were held in the directors' room of Chantrey, Button & Company. Long before March 30, 1954, and since, fiscal matters between the Gadsdens and the Syndicate were handled through Chantrey, Button & Company, which Company the Syndicate always held out to the Gadsdens to be its fiscal agents.

In 1952, Mr. Mueller took over for the Gadsdens because of their old age, infirmities and disabilities. All of his correspondence regarding the business was with Chantrey, Button & Company of London.

Beginning about 1917, at the end of each subsequent year, the Gadsdens received an annual statement from Chantrey, Button & Company showing, acknowledging, and stating the amount due the Gadsdens from the Syndicate. Exhibits 7 to 18, inclusive, show that Chantrey, Button & Company were the fiscal agents of the Syndicate, and as such were held out, accepted, and acted in all transactions with the Gadsdens. Exhibit 10 was a letter written by Kenneth R. Gray of Chantrey,

Button & Company to Mrs. Gadsden, in which was enclosed the Judith Basin County Treasurer's official statement of the 1955 taxes due on the New Mine Sapphire Syndicate's property, showing that Chantrey, Button & Company had been handling payment of the taxes "in past years". In such letter, Mr. Gray practically requested Mrs. Gadsden to pay the taxes in the amount of $203.90 for the year 1955 because the Syndicate did not have the money.

Mr. McNair, who visited London, wrote to Chantrey, Button & Company for, and received from them, an appointment to meet with the board of directors of the Syndicate. McNair appeared, according to appointment, at the office of Chantrey, Button & Company on March 31, 1954, at which time he was conducted into a room where the Syndicate had arranged the directors' meeting and was there introduced by Mr. Gray to the directors, R. H. Keller, Mrs. I. M. K. Morris and Brian Walker. These were the same individuals who signed the annual reports of the Syndicate. Mr. McNair took up with the board the matter of the money owing to the Gadsdens as Mrs. Gadsden had requested him to do. Thereafter McNair requested that the board render an account stated of its indebtedness to the Gadsdens. Mr. Keller, president of the Syndicate, responded with a figure between $29,000 and $30,000, the exact figure Mr. McNair could not recall. Keller informed McNair that was the figure that they accepted and acknowledged as owing to Mrs. Gadsden, told McNair they would supply Mrs. Gadsden with a statement, and that Chantrey, Button & Company would forward statement of the account. These statements arose out of discussions among the board of directors and Mr. Keller, the president of the Syndicate speaking for the group. The indebtedness to the Gadsdens was included in the liabilities of the Syndicate in the annual reports, Exhibits 19 to 22. Never at any time did the appellee's board of directors question appellee's board of directors question appellee's debt to the Gadsdens in the sum of $29,000 in discussing the matter with Mr.

McNair at the meeting in the directors' room of Chantrey, Button & Company. In addition to Mr. Gray, two other men of Chantrey, Button & Company were present at such meeting.

Oscar Mueller, acting as attorney in probating Mr. Gadsden's estate, wrote a letter to Chantrey, Button & Company from Lewistown, Montana, dated March 20, 1954, for a statement of appellee's indebtedness to the Gadsdens at the time of Gadsden's death on March 11, 1954, so he could include one-half of such amount in the inventory in probate.

In accordance with such request, Attorney Mueller received a letter, Exhibit 18, dated April 5, 1954, signed ''Chantrey, Button and Company'', reading in part:

''As requested we enclose a statement of the amount due Mr. and Mrs. Gadsden as it appears in the last audited Balance Sheet at the 31st December, 1953 [meeting] amounting in total to $29,317.42 of which approximately half represented accumulated Interest.''

One-half of that amount, or $14,658.71, was set up in the inventory of Mr. Gadsden's estate and distributed to Mrs. Gadsden in the decree of distribution which decreed that she was the distributee of the entire claim in the sum of $29,317.42. The account stated thus was accepted by the creditor.

The notice of motion for a new trial was upon the following grounds:

(1)   Irregularity in the proceedings of the Court and abuse of discretion of the Court by which the defendant was prevented from having a fair trial.

(2)   Accident or surprise which ordinary prudence could not have guarded against.

(3)   Newly discovered evidence, material for the defendant, which it could not, with reasonable diligence, have discovered and produced at the trial.

The assignments of error are:

(1)   The court was without jurisdiction to enter the amended order, dated and filed August 1, 1958, being more than

fifteen days after the hearing which was noticed for and had July 16, 1958, or to make a substantive change in the ruling in the first order entered July 29, 1958, which is void.

(2) The showing made in support of the motion for a new trial is insufficient in law to move the trial court to grant a new trial.

(3) Appellant is entitled to the judgment as entered, upon the whole record.

As to the first point appellant argues that the amended order of August 1, 1958, is a nullity because it was made on the 16th day after the motion for new trial was submitted; and being after the 15 days as provided in R.C.M. 1947, § 93-5606, the court was without jurisdiction. He then argues that the order of July 29th was made on a ground not specified in the notice of motion and not provided for by R.C.M. 1947, §§ 93-5602 and 93-5603. Section 93-5602 provides that in cases tried by the court without a jury, a new trial may be granted only on the grounds stated in subdivisions 1, 3 and 4 of section 93-5603. These three causes were the causes set forth in the notice of motion for a new trial, but subdivision 6, "insufficiency of the evidence to justify the verdict or other decision" was the cause recited by the court as the basis for its order of July 29th.

Whether or not the amended order of August 1, which granted a new trial (as did the order of July 29th) is a nullity because outside of the 15 day period we shall not decide. We shall view this appeal and if the order was based on one of the statutory causes set forth in the notice of motion, or that it was general in its terms.

We shall also, for the purpose of this opinion, adopt the rule that if the trial court acted within its sound legal discretion in ordering a new trial upon any ground stated in the motion, then its action will be upheld.

This brings us to a consideration of specification of error No. 2 that the showing made in support of the motion for new

trial was insufficient in law. We shall first discuss causes No. 2 and 3 of the notice of motion. To repeat them:

(2) Accident or surprise which ordinary prudence could not have guarded against; and

(3) Newly discovered evidence, material for the defendant, which it could not, with reasonable diligence, have discovered and produced at the trial.

Without reciting in detail the affidavits supporting the motion for new trial, suffice it to say that they utterly fail to show any accident or surprise; nor do they show what newly discovered evidence is now available nor any of the other requirements as set out in Ebaugh v. Burns, 65 Mont. 15, 210 P. 892; Kerrigan v. Kerrigan, 115 Mont. 136, 139 P.2d 533; State v. Estep, 103 Mont. 78, 61 P.2d 830; Jenkins v. Kitsen, 62 Mont. 515, 205 P. 243; State v. Matkins, 45 Mont. 58, 121 P. 881; Bell v. Bell, 133 Mont. 572, 328 P.2d 115.

Thus, the only possible grounds for the trial court's action is that of irregularity in the proceedings of the court and abuse of discretion of the court by which the defendant was prevented from having a fair trial. Under this assertion, the appellee contends: (1) that the failure of the trial court to rule on objections was such an irregularity as to support an order granting a new trial; and (2) that the failure of the trial court to make written findings was an irregularity sufficient to support an order for a new trial.

In Garrison v. Trowbridge, 119 Mont. 505, 506, 507, 177 P.2d 464, 465, we said:

"In considering the propriety of the court's ruling in granting the new trial, we keep in mind that, 'The granting, or refusal to grant, a motion for a new trial lies within the sound discretion of the trial court, and its order thereon will be reversed only for manifest abuse of that discretion. * * *

" 'An order, general in its terms, granting a new trial, will be upheld if it can be sustained on any ground stated

in the motion therefore, and such an order will not be set aside as readily as an order denying a new trial, since the latter ends the case, whereas the former merely restores the parties to the position they occupied before the trial.' Maki v. Murray Hospital, 91 Mont. 251, 260, 7 P.2d 228, 230. To the same effect is Walsh v. Butte, Anaconda, etc., R. Co., 109 Mont. 456, 97 P.2d 325. A stronger showing is required to justify interference with an order granting than one refusing a new trial. Collins v. Hodgson, 5 Cal. App.2d 366, 42 P.2d 700.''

█ With these rules in mind we look to the court's rulings on objections.

In the course of the trial, numerous objections were made by the defendant to the introduction in evidence of testimony offered by plaintiff. A typical exchange was as follows:

''Q. (By Mr. Hoffman) I will now hand you the instrument marked Exhibit No. 18 for the plaintiff by the reporter, and ask you to state how you came into possession of that letter? A. Through the mail.

''Q. Do you have the envelope in which it was mailed? A. I do not.

''Q. Do you know where it was mailed from? A. London, England.

''Q. Do you recognize that signature? A. Yes.

''Q. Is it one of the usual signatures you found on the letters from Chantrey, Button & Company? A. Yes.

''Mr. Hoffman: We offer Exhibit No. 18 in evidence.

''The Court: Consisting of two pages?

''Mr. Hoffman: That is the part referred to in the letter.

''Mr. Davidson: Objected to for the reasons heretofore given as to Exhibit No. 18, and with the additional objection that it is further incompetent, and irrevelant and immaterial because it appears to be only a copy of a book account, and without any attempt to make it an agreed contract, or account stated. It is merely a copy of an ac-

count, it appears to be merely a copy of the books kept by an accounting firm. No authority shown that they had any right as agent, or otherwise, to bind the company to an account stated, and the accounts of the books of the corporation are not a book of accounts stated.

"The Court: I will let it in, subject to the objection, and take it under advisement.

"Whereupon Exhibit No. 18 for the plaintiff was received in evidence".

At other times, counsel for plaintiff stated that he would later complete a foundation and connect it up.

Finally, at the conclusion of the trial appears this:

"Mr. Davidson: We rest.

"Mr. Hoffman: We rest.

"The Court: Let the record show, I have to do this to comply with the Supreme Court requirements, that matters taken under advisement are overruled, but the Court in determining this case will take into account the objections made and render its judgment accordingly. Anything further?"

Nothing further was offered. In fact, the defendant offered no evidence on its own behalf.

It is immediately seen that the court did specifically rule on the objections and invited further action or evidence. There was none. While the practice displayed by the trial court was not to be commended, it was not so irregular as to be grounds for a new trial or to support a finding that the defendant did not have a fair trial. To grant a new trail on such a showing is a manifest abuse of discretion.

█ The next contention, that the failure of the trial court to make written findings is an irregularity sufficient to support an order granting a new trial, does not have merit. R.C.M. 1947, § 93-5305, provides:

"No judgment shall be reversed on appeal for want of findings at the instance of any party who, at the close of

the evidence and argument in the cause, shall not have requested findings in writing, and had such request entered in .the minutes of the court; nor in cases tried by the court shall the judgment be reversed on appeal for defects in the findings, unless exceptions be made in the court below for a defect in the findings or in a finding.''

Herein the appellee made no request for findings. A party failing to request findings cannot allege error because of the omission to obey section 93-5305. While section 93-5305 does not include orders granting new trials, nevertheless it is applicable and the failure to make findings, when not requested, is not such an irregularity as to support an order for a new trial. See Trudgen v. Trudgen, 134 Mont. 174, 329 P.2d 225, and authorities cited therein.

For the reasons heretofore stated, the order granting a new trial is reversed and the judgment restored.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE ADAIR concur. MR. JUSTICE ANGSTMAN being absent took no part in the hearing or determination of this appeal.