In the Matter of the ESTATE of EFFIE DELLA COCA-NOUGHER, Deceased, CHARLES L. COCANOUGHER, Contestant, Plaintiff and Appellant, v. WILLIAM MAR-ION COCANOUGHER and EFFIE MAY NYHART, Contestees, Defendants and Respondents.

No. 10332
Submitted June 11, 1962.     Decided October 10, 1962.
Rehearing Denied November 27, 1962
375 P.2d 1009

Harold L. Allen, Three Forks, Doepker & Hennessey, Butte, Mark J. Doepker (argued orally), Butte, for appellant.

Schulz & Davis, Dillon, Leonard A. Schulz (argued orally), Dillon, Carl M. Davis (argued orally), Dillon, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is one of three appeals involving the same parties in estate matters concerned with the administration of the estate of Effie Della Cocanougher. The two other appeals are No. 10240, Cocanougher v. Cocanougher, ...... Mont. ......, 380 P.2d 883 (On rehearing), decided April 18, 1963, No. 10241, Cocanougher v. Cocanougher, 141 Mont. 28, 375 P.2d 1014, the opinions being filed this same date.

This is an appeal from an order granting a new trial in a will contest after a special verdict by a jury to the effect that the testatrix was unduly influenced in the making of her will.

Testatrix Effie Della Cocanougher died on September 5, 1959. Her last will was executed on November 22, 1957, and was admitted to probate on October 9, 1959. Two of her children, respondents William Marion Cocanougher and Effie May Nyhart, were appointed executor and executrix. Thereafter, almost one year later, the other of testatrix's children, Charles L. Cocanougher, instituted a contest to set aside the probate of the will on the three grounds: (a) incompetency of the testatrix, (b) undue influence of respondents upon the testatrix to secure the execution of the will, and (c) execution of the will by fraud of respondents.

The will provided that respondents receive the estate. It specifically provided as to Charles, the contestant, as follows:

"I make no provision for my son, Charles LeRoy Cocanougher, in this my last will for reason that I have fully provided for him during my lifetime and further for the reason that he has ample means of his own."

The contestant Charles will be referred to hereafter as the plaintiff or simply as Charles. The contestees, William and Effie May, will be referred to as the defendants or as William

or Effie May. Plaintiff is appellant here. Defendants are respondents. The case was tried before a jury. At the close of the plaintiff's case, defendants moved for judgment of nonsuit on all three aforementioned grounds. Initially the court granted the motion as to undue influence and fraud, but denied the motion as to incompetency. Subsequently the court vacated its ruling as to undue influence; and at the close of the evidence two questions were submitted to the jury.

(1) Was the deceased, Effie Della Cocanougher, competent to make a Last Will and Testament on November 22, 1957?

(2) Was the mind of the deceased, Effie Della Cocanougher, at the time of the execution of the instrument dated November 22, 1957, free from undue influence?

To the first question the jury answered, "Yes". To the second question the jury answered, "No". Judgment was entered revoking the probate of the will on the grounds that decedent was unduly influenced by the defendants in the execution of the will.

Thereafter the defendants moved for a new trial. The trial judge granted the motion and ordered a new trial. The appeal is from the order granting a new trial.

First, the evidence as to the execution of the will shows it was executed on November 22, 1957. The attesting witnesses were Carl M. Davis, an attorney at Dillon who drafted the will, and his secretary, Rose Zugel Brown. In early November 1957, defendant Effie May Nyhart, at testatrix's request, drove her to Dillon to see Attorney Davis. Defendant Effie May Nyhart helped testatrix up the stairs to Davis's office, but did not remain during the consultation. Defendant Effie May had not known Davis previously. Attorney Davis visited with testatrix for about thirty minutes; she paid a bill for services previously rendered, and then inquired about making a will. At that time no terms of a will were discussed.

On November 22, 1957, again at the testatrix's request, defendant Effie May drove her mother to Dillon to get some coal.

Testatrix went to see Attorney Davis. Because of the physical condition of testatrix, defendant Effie May parked her pickup truck in front of the attorney's office, went upstairs and advised Attorney Davis that her mother wished to see him. Defendant Effie May then went on errands of her own, and returned in about an hour. Testatrix did not disclose to defendant Effie May the nature of her business with Attorney Davis.

Attorney Davis consulted with testatrix while she outlined the terms which she wished him to incorporate in her will. Davis returned to his office and drafted the will in accordance with her instructions. He and his secretary, Rose Zugel Brown, returned to the pickup truck with the will. It was read to testatrix, who thereupon signed it, the attesting witnesses then signed at her request. The will was delivered to Attorney Davis for safekeeping. No one else was present other than testatrix, Attorney Davis and his secretary Mrs. Brown during either the consultation, preparation, or execution of the will.

Just as Mr. Davis was taking his leave of testatrix, defendant Effie May returned.

Mr. Davis placed the will in a safety deposit box in the First National Bank of Dillon where it remained until after the death of testatrix almost two years later.

Shortly after the death of testatrix in September 1959, Attorney Davis encountered plaintiff Charles and defendant Effie May in the corridor of the office building in Dillon. Within a few minutes defendant Effie May came to the office of Attorney Davis and inquired as to whether it was true that the oldest male was entitled to act as administrator. It was then that she first learned that her mother had left a will. Attorney Davis told her of its existence. The foregoing is a brief resume of the situation relating to the will itself.

Now, to relate briefly the family and ranching situation as shown by the record. Testatrix owned a ranch located on the south side of the Big Hole River in Madison County. Plaintiff Charles, her oldest son, had a ranch four and one-half miles up-

stream from the ranch of his mother. Defendant Effie May Nyhart, her only daughter, lived with her own family on the Dillon-Twin Bridges Highway about seven and one-half miles from her mother's ranch. Defendant William, the other son of testatrix, lived with his family in Twin Bridges.

William Marion Cocanougher, father of the three children involved here, died in the year 1946. His estate was never probated and is now the subject of an appeal in Cause No. 10241, Cocanougher v. Cocanougher, 141 Mont. 28, 375 P.2d 1014, opinion in which is being filed this same date. Testatrix was the widow. The ranch, the "old home place" was owned by testatrix. At one time, in 1941, the "old home place" was lost on sheriff's sale. Plaintiff, then a young man, bought and redeemed it, borrowing money for the purpose. The deed was in his name until 1943 when the loan was paid off from proceeds of the sale of cattle owned by the father and mother of plaintiff, and by plaintiff, although plaintiff admitted he didn't have very many cattle then. At any rate from 1943 on, the "old home place" was owned by testatrix.

Testatrix, after the death of her husband in 1946, continued on as a rancher. Her son Charles, plaintiff, bought his ranch in 1925 or 1926 and then purchased, with the help of testatrix, another ranch referred to as the Mosteller place. Plaintiff Charles and testatrix operated the three ranches in what might be called a joint enterprise, but yet separate. They ran their cattle and sheep together, each had their own separate brands. Cattle were purchased and sold together, yet accounted for separately.

Testatrix was described as a large woman whose life was tied up in raising livestock. In later years she had difficulty getting around, but continued very active until February of 1956 when she suffered a slight stroke and was hospitalized. Her ability to get around was impaired by what appeared to be a stroke, advancing age, overweight and a large hernia. Yet she con-

tinued to live alone at times, to handle chores and to manage her own business. She was a strong-willed, independent person.

Plaintiff Charles and testatrix remained very close until the year 1957 in their ranching operation. At that time the defendants took over the management of the ranching affairs with their mother.

With this brief background of the will and the personal situation set forth, we shall look to our problem on this appeal. The trial judge set aside the special verdict of the jury, and the judgment entered thereon, and granted a new trial.

The question of fraud had been removed from the jury at the close of plaintiff's evidence. The question of incompetency was resolved against the plaintiff by the jury. That leaves our inquiry to whether the trial court abused its discretion in granting a new trial on the issue of undue influence.

The appellant's specifications of error are five in number. The fifth specification goes to the inquiry above. Specifications 1, 2, 3 and 4, are directed to the refusal of the trial court to give certain offered instructions, and then it is urged that the trial court should have followed the refused instructions in considering the motion for a new trial. Actually all of the specifications of error resolve themselves and are argued by both parties on the inquiry as to abuse of discretion in granting the new trial on the issue of undue influence.

In Herren v. Hawks, 139 Mont. 440, 365 P.2d 641, 643, we considered the granting of new trials as follows:

"There are several well-established rules governing the granting of new trials. Innumerable cases in this state have laid down the general rule that the granting of a new trial is within the sound discretion of the trial court.

"In Garrison v. Trowbridge, 119 Mont. 505, 506, 507, 177 P.2d 464, 465, this court said:

" 'In considering the propriety of the court's ruling in granting the new trial, we keep in mind that, "The granting, or refusal to grant, a motion for a new trial lies within the

sound discretion of the trial court, and its order thereon will be reversed only for manifest abuse of that discretion. * * *

" ' "An order, general in its terms, granting a new trial, will be upheld if it can be sustained on any ground stated in the motion therefor, and such an order will not be set aside as readily as an order denying a new trial, since the latter ends the case, whereas the former merely restores the parties to the position they occupied before the trial." Maki v. Murray Hospital, 91 Mont. 251, 260, 7 P.2d 228, 230. To the same effect is Walsh v. Butte, Anaconda etc. R. Co., 109 Mont. 456, 97 P.2d 325. A stronger showing is required to justify interference with an order granting than one refusing a new trial. Collins v. Hodgson, 5 Cal.App.2d 366, 42 P.2d 700'.

"The reason for allowing such wide discretion in the trial court is aptly stated in Brennan v. Mayo, 100 Mont. 439, 448, 50 P.2d 245, 249, as follows:

" ' 'Here we are permitted to examine only the cold record, whereas the trial judge who granted the motion for a new trial was afforded the opportunity of seeing the witnesses and of hearing them testify. He was thus better able to understand and construe the testimony in the light of the surrounding circumstances.'

"In this case the order granting the new trial did not specify on which ground it was made. The rule is established that if the trial court acted within its sound discretion in ordering a new trial upon any ground stated in the motion, then its action will be upheld. Kynett v. New Mine Sapphire Syndicate, 137 Mont. 82, 350 P.2d 361."

R.C.M.1947, § 13-311, defines undue influence as:

"Undue influence consists:

"1. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him;

"2. In taking an unfair advantage of another's weakness of mind; or,

"3. In taking a grossly oppressive and unfair advantage of another's necessities or distress."

In Hale v. Smith, 73 Mont. 481, 486-489, 237 P. 214, 216, 217, the subject of undue influence and the requirements of proof were discussed as follows:

"The general principles applicable are stated by the authorities substantially as follows: 'Undue influence, such as will invalidate a will is not easy to define with precision. It must be such as to control the mental operations of the testator, overcome his power of resistance, and oblige him to adopt the will of another; thus producing a disposition of property which the testator would not have made if left freely to act in accordance with his own pleasure. The means of control are not important, and may consist of force or coercion, violence or threatened violence, or moral coercion. * * * The extent or degree of the influence is wholly immaterial if sufficient to make the act in question the act of another rather than the expression of the mind and heart of the actor. But to destroy the validity of a will, the undue influence must be specially directed on the testamentary act, so that its effect may be registered there, and must be sufficient to destroy the free agency of the testator, and control the disposition of his property under the will.' 28 R.C.L. 137.

"It 'imposes a restraint on the will of the testator, who, but for the restraint, would be free and responsible, so that his testamentary act is not the result of his own volition, but of the will of another.' In re Murphy's Estate, 43 Mont. 353, 116 P. 1004, Ann.Cas.1912C, 380.

" 'The theory underlying the doctrine of undue influence is that the testator is induced, by the means employed, to execute an instrument in form and appearance his will, but in reality expressing testamentary dispositions which he would not have voluntarily made. 40 Cyc. 1146; Page on Wills, § 126, p. 145.

24

To defeat a will the undue influence must have been directed toward the particular testamentary act and at the time thereof, or so near thereto as to be operative. 40 Cyc. 1145; Page on Wills, § 130, p. 151.' Murphy v. Nett, 47 Mont. 38, 130 P. 451.

''In order to nullify a will, there must be more than influence; undue influence must be shown to have been exercised. Influence becomes undue only when it overcomes the will of the testator, so that his free agency is destroyed. In effect, it amounts to the substitution of the will of another for that of the testator. Mere suspicion that undue influence was brought to bear is not sufficient to justify setting aside a will. 'It is not enough to show that the defendant had an opportunity to exercise such influence, but it must also appear that the influence was actually exercised, and not only so, but that it was pushed to such an extent that the resultant will was not that of the testator but that of the parties procuring its execution.' In re Pittock's Will, Leadbetter v. Price, 102 Or. 159, 174, 199 P. 633, 637 [202 P. 216,] (17 A.L.R. 218).

''The influence exerted must consist of some act or power exercised over the mind of the testator, sufficient to destroy his free agency at the time of the execution of a will, so that in effect the will of another is thereby substituted for that of the testator. It is not sufficient that the testator may have been influenced by the beneficiary in consequence of their fiduciary relationship in the ordinary affairs of life or that he lived with the beneficiary at the time of the execution of the will, in consequence of which she may have had better opportunity than others to ingratiate herself with him. Mere general influence in the affairs of life or method of living at the time of the execution of a will by a testator is not proof of undue influence in the contemplation of our statute, and, in order to establish it as a fact, it must be shown by proof that it was exercised upon the mind of the testator directly to procure the execution of the will. Mere suspicion that undue influence may have or could have been brought to bear is not sufficient. It is never pre-

sumed, and must be proven like any other fact. The burden of proving it rests upon the contestant. * * *

"The most that can be said of the evidence in the instant case is that it shows opporunity on the part of Lutie Gibson White to exercise undue influence in the execution of the will, and that she might have done so if she were so disposed, and had been possessed of sufficient influence. This, however, is not sufficient. Undue influence must be shown to have actually existed and been exercised, so as to affect the terms of the will. There is no substantial evidence in support of either of these conditions. In re Hegarty's Estate, [46 Nev. 321, 212 P. 1040,] supra.

"Courts have neither the right nor power to reframe the wills of decedents, nor to overthrow the expressed intent therein contained, in the absence of direct and substantial proof sufficient to bring the case within the well-established rules of law regarding undue influence.

"Viewing all of the evidence in aspect most favorable to the contestant, there is absolutely no proof that undue influence was exercised upon the mind of the testator in the execution of the will."

Appellant cites Hardy v. Hardy, 133 Mont. 536, 326 P.2d 692, for the proposition that where there is substantial evidence in support of the jury's findings they should not be disturbed by the trial court. This statement of the rule is lifted out of context from the Hardy case and is not applicable here. In that case, the proof of incompetency, aside from undue influence, was almost overwhelming.

The record in the instant case is voluminous and most, if not all, of the plaintiff's evidence was directed toward the alleged incompetency of the testatrix to make a will. Yet, at the same time it was repeatedly admitted by the plaintiff that he dealt with his mother in business affairs as usual. There was no evidence, or at the very most just a suggestion of evidence, as to any undue influence being exercised, as the term is used in our statute and cases heretofore referred to. According to all

26

of the witnesses, none of them knew of the execution of a will nor its terms.

Appellant urges upon this appeal that cases from California state the correct rule. He urges Estate of Graves, 202 Cal. 258, 259 P. 935, and Estate of Nelson 134 Cal.App. 561, 25 P.2d 871, as stating a rule to the effect that when a contestant shows that the proponent of a will sustained a confidential relationship toward the testator and actively participates in procuring execution of a will and unduly profits thereby, the burden then shifts to the proponent to prove that the will was not induced by his undue influence. As our foregoing discussion of Montana law indicates, we have no such shifting of the burden of proof. But, even if we followed this line of reasoning, the issue of abuse of discretion in granting a new trial would not change the result. (And see the later case of Estate of Haywood, 109 Cal.App. 2d 388, 240 P.2d 1028, as to the rule in California.)

As mentioned before, the record is voluminous and much of it is directed to competency which is not in issue here. Nothing would be gained by reciting the evidence at the trial. These observations, though, might put in context our discussion of the law, keeping in mind the rules stated as to the requirement of a showing of manifest abuse of discretion by the trial court in the granting of a new trial. At the time testatrix made her will she was living alone and attending to her own affairs. She was old, but strong-willed. Her last testament was drafted by an attorney of her own choosing. It was executed in the absence of beneficiaries and without their knowledge until following her death. She did not change it for twenty months before her death. This matter is being returned for a new trial so we shall not comment further, except to say, that our review of the testimony and exhibits reveals much to indicate that the trial judge did not abuse his discretion in granting a new trial.

For the foregoing reasons the order granting a new trial is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR and JOHN C. HARRISON, concur.