MR. JUSTICE CASTLES
(dissenting) :
I dissent.
The statement of facts in the majority opinion is not inaccurate, but it is tailored to fit the result reached.
All vehicles involved in this matter were proceeding in a southerly direction on U.S. Highway 93 from various points north of Elmo, Montana. As that highway approaches Elmo from the north, it travels for at least a mile and a half or two miles in a westerly direction before entering a broad, sweeping *113 curve to the left at the outskirts of Elmo. From this curve, the highway extends in a straight line southerly for a distance of more than a mile, passing through the small settlement of Elmo. The “Elmo Cash Store” fronted on the highway, facing west, a considerable distance south of the curve. This accident took place almost in front of that store.
Defendant Johnson was a truck driver employed by the defendant Sihrer and was driving a Sihrer truck and trailer loaded with logs from a logging area some twenty miles north of Elmo. Robert Hanson was driving his own loaded logging-truck also in a southerly direction on Highway 93 and came up behind the Sihrer truck some two or three miles north of Elmo on the straight stretch of highway before reaching the curve and followed it around the curve and into the town of Elmo. After rounding the curve, Hanson became aware of the fact that the Sihrer truck was slowing down to turn into the Elmo Store. Both logging trucks were slowing at that time.
The Beebe car, a small foreign make called a Datsun, came up behind these two logging trucks at some point and at some unknown rate of speed. The plaintiff testified that he was a passenger with his wife driving and paid little, if any attention to her driving as he was engaged in reading some material. He first observed the Hanson truck just shortly before the accident. At no time was Hanson aware of the Datsun following or approaching from the rear until it suddenly appeared, without warning and without sounding its horn, by the left front fender of his truck as it was attempting to pass.
Highway Patrolman George Goggins, a witness for the plaintiff, testified that the driver of the Hanson truck, another plaintiff ’s witness, told him that the Sihrer truck was some 250 to 300 feet ahead of the Hanson truck when the Datsun appeared by his left front fender. Notwithstanding this substantial distance, the evidence establishes that the Datsun made an abrupt turn to the right, at such speed that its left tires left a definite mark in the roadway for a distance of some 176 feet which *114 mark proceeded to the right shoulder of the highway where the marks indicated that the vehicle had been sharply turned to its left, overturned and rolled over and over an additional distance of some 228 feet before coming to a stop.
Defendant Johnson, driving the Shirer truck, testified that after rounding the curve on the highway he started to slow down to turn into the Elmo Store as it was his intention to obtain some cigars and a Coke. .At that time the Hanson truck was three or four truck lengths behind him — some 100 to 240 feet. He glanced to the rear in his mirror and saw another vehicle about a quarter of a mile behind him' coming around the curve. He turned on his signal for a left turn and crossed over the center line. When the tractor of his rig was off the highway and into the driveway of the store he observed the Datsun attempting to pass the Hanson truck. By the time his rig had completely cleared the road and came to a stop the Datsun then was observed rolling past the truck and down the highway.
Two impartial witnesses in the Elmo Store, Mr. and Mrs. Unzer, saw the Sihrer truck pull off the highway into the driveway of the store and stop. Just as it stopped and the driver got out, they saw the Datsun car rolling down the highway. This testimony verified the testimony of Johnson.
In addition to the testimony of defendant Johnson that he started his left turn across the center line, with his left turn signal lights on, plaintiff’s witness Hanson testified that when he first observed the Datsun by his left front fender, the Sihrer vehicle was well over the center line into its left turn. A sketch made by Hanson the day following the accident of the relative position of the vehicles shows the position of the Sihrer truck to be well over the center line and into its turn into the store driveway at the time the Datsun appeared by the front of the Hanson truck.
There was no evidence at any time that the driver of the Datsun ever applied any brakes or attempted to slow down.
*115 Following the accident the left turn light on the left mirror of the Sihrer truck was still activated and blinking.
Under the rules concerning new trial granted in Garrison v. Trowbridge, 119 Mont. 505, 177 P.2d 464; Brennan v. Mayo, 100 Mont. 439, 50 P.2d 245; and Tigh v. College Park Realty Co., 149 Mont. 358, 427 P.2d 57, we have said that the trial court will not be reversed except on a manifest abuse of discretion. The majority opinion does not discuss nor distinguish these cases; but relies on Campeau v. Lewis, 144 Mont. 543, 398 P.2d 960, to decide in this case that “there is nothing incredible about the verdict for the defendant.”
Analyzing each of the grounds for both a motion for a judgment notwithstanding the verdict and a motion for a new trial shows clearly that the trial judge did not abuse his discretion and there was no manifest abuse of discretion.
The various contentions of the plaintiff and what this Court relied on to weigh the testimony and find that the verdict was not incredible show clearly that there is a serious lack of proof on plaintiff’s part including the failure to signal a left hand turn, the failure to yield the right of way, failure to keep a proper lookout. All of the evidence, fairly appraised, shows that it was wholly insufficient to justify the verdict; and even more, the trial court should have stricken plaintiff’s contention at the close of plaintiff’s case. Yet, the majority opinion by taking the evidence most favorable to plaintiff, finds that the verdict was not “incredible”. This would seem to be a new standard for orders granting new trials and would seem to eliminate any trial court discretion. The majority does not overrule or distinguish Garrison, Brennan or Tigh, supra.
Strangely, the majority uses an Idaho case, Bellon v. Heinzig, 347 F.2d 4, 9 Cir., a federal case, to support its result, but that case is clearly distinguishable. Johnson did look to the rear. He had no reason to anticipate that the driver of the Datsun would be completely inattentive to the most obvious logging *116 truck making a turn. It goes without saying that a loaded logging truck making a left turn is conspicuous.
I would go further to say that, under the evidence here, the driver of the small foreign car was eontributorily negligent as a matter of law. The physical facts speak more loudly than any witness and establish that the Datsun was moving at such a speed its driver could not control it and established clearly that the proximate cause of the accident was that of the driver’s own negligence.
Much, much more could be said in this dissent as to why the district court was correct in granting a new trial, but it would be to no avail. This Court is apparently even approving an instruction on “sudden emergency” where the plaintiff is clearly negligent. Even the majority opinion concedes that the negligence of the plaintiff was a jury question. If that be true, no sudden emergency doctrine should apply. On this ground alone, the trial court was correct in granting a new trial. The majority opinion does not even discuss this issue other than to reject it. Clearly here, the trial court did not manifestly abuse its discretion. Just what the rule may now be in this Court’s review of a trial court’s order granting a new trial is highly speculative.