BARBARA ANN HERREN, a Minor Child, by Joylyn A. Berg, Her Guardian ad litem, Plaintiff and Respondent, v. HAROLD HAWKS and KAREN HAWKS, Husband and Wife, Defendants and Appellants.

No. 10235.

Submitted September 20, 1961. Decided October 25, 1961.

365 P.2d 641.

Cooke, Moulton, Bellingham & Longo, William R. McNamer (argued orally), Billings, for appellants.

J. H. McAlear (argued orally), Red Lodge, Robert H. Wilson (argued orally), Hardin, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from an order of the district court of the thirteenth judicial district granting a new trial to the plaintiff, respondent here.

Plaintiff, a minor, brought suit through her mother as guardian ad litem, for injuries resulting from being bitten by a dog owned by the defendants, appellants here.

The matter was tried and the jury returned a verdict in favor of the defendants.

Plaintiff moved for a new trial under the provisions of section 93-5603, R.C.M. 1947. An order granting a new trial, couched in general terms, was entered and this appeal was taken therefrom by defendants.

The evidence at the trial established that the plaintiff, a five-year-old girl, was bitten about the face by a large German shepherd dog, named Kybo, the property of defendants.

On the day in question the plaintiff's mother left her in the care of one Marilyn Hansen. Marilyn Hansen at the time lived with her husband and family in a basement apartment which they rented from the defendants. The defendants and their children occupied the rest of the dwelling. It appears that the plaintiff and several of Marilyn Hansen's and defendants' children were given cookies and were sent out to the backyard to play. The dog Kybo was also in the backyard. What happened thereafter was only witnessed by the small children and has not been brought to light. The defendant, Harold Hawks, arrived home shortly after the children had been sent outside. He found the plaintiff on the ground with several large gashes on her face and the dog Kybo standing nearby.

At the trial there was no dispute that the dog had bitten the plaintiff and that the dog was the property of the defendants. The only facts in controversy were whether or not the defendants had notice of any vicious propensities of their pet and the amount of the damages.

An incident occurred during the course of the trial which

is the basis of plaintiff's motion for a new trial. During a recess in the trial just after selection of the jury, Marilyn Hansen and plaintiff's mother and guardian ad litem, met the defendant, Karen Hawks, in the ladies' restroom in the Courthouse. The defendant had apparently lost control of her temper. She ordered the plaintiff's mother to stay off of her property. She then turned on Marilyn Hansen who had been subpoenaed as a witness for the plaintiff and accused her of "throwing in" with the plaintiff and threatened, "you'll be sorry", or words to that effect.

Marilyn Hansen was called as the first witness for the plaintiff within minutes after the restroom incident.

The affidavit of one of plaintiff's attorneys filed in support of the motion for a new trial states in part as follows:

"In our view, the important point in the testimony of Marilyn Hansen was the matter of the attack [by the dog Kybo] on the garbageman and more important still was the knowledge of it given to Mrs. Hawks. * * *

"On the stand Mrs. Hansen was in a worse mental state than her appearance had indicated to us. She seemed to be on the verge of tears and almost unable to speak audibly. My associate was questioning her and had trouble getting answers to his questions. Once he whispered to me that he wished he could do something to get her to talk and wondered if I had any idea what was wrong with her. On direct, the following questions and answers were given as to the garbageman, in the examination of Mrs. Hansen:

"Q. Did you tell her or did you tell Mr. Hawks about the episode with the garbageman? A. *I am not too sure; that's so far back. I may have mentioned it to Mrs. Hawks.* * * *

"To us that testimony was a stunning blow. The notes which both of us had taken showed no indecision or lack of memory on her part. The answer came as a complete surprise and we had no reason to anticipate that she would answer in that way."

The affidavit of Marilyn Hansen states:

"I don't know why I testified on the stand that I didn't remember telling Karen Hawks of the attempted attack by Kybo of the garbageman, when I did remember. I was so upset I just couldn't seem to think. I would have testified truthfully except for the conduct and threatening attitude of Mrs. Hawks in the ladies' restroom."

Plaintiff closed her case without ever having brought the restroom incident to the court's attention in any legally recognized manner, that is, by motion or otherwise. Plaintiff's counsel did, however, cross examine concerning it so that the trial court was aware of the circumstances, and was able to observe the effects on the witness.

The affidavits of the plaintiff's attorneys state that they did not bring the restroom incident to the attention of the court formally because they did not know the details of what had happened. The attorneys admit that they had time to get the story from the witness Marilyn Hansen, but explain their failure to do so on the grounds that they feared for the safety of the witness because of the assertedly potentially dangerous character of the defendant Harold Hawks. They recite in their brief:

"It is true that we as attorneys might have gone to the Hawks' premises before the end of the trial and obtained the version of Marilyn Hansen's, which we did obtain, after her husband had returned home and following the rendition of the verdict, but as we viewed it she was in close proximity to an admittedly violent and unpredictable person, Mr. Hawks, who might or might not do damage to her and to her children if aggravated by our return to premises from which we had been ordered off, and the situation there was fraught with potential harm to a woman who was involved in our case only as a witness."

The plaintiff moved for a new trial under the provisions of section 93-5603, R.C.M.1947, on the following grounds:

"1. Irregularity in the proceedings of the court, jury, or adverse party, or any order of the court, or abuse of discretion, by which either party was prevented from having a fair trial; * * *

"2. Accident or surprise, which ordinary prudence could not have guarded against;

"3. Newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial."

There are several well-established rules governing the granting of new trials. Innumerable cases in this state have laid down the general rule that the granting of a new trial is within the sound discretion of the trial court.

In Garrison v. Trowbridge, 119 Mont. 505, 506, 507, 177 P.2d 464, 465, this court said:

"In considering the propriety of the court's ruling in granting the new trial, we keep in mind that, 'The granting, or refusal to grant, a motion for a new trial lies within the sound discretion of the trial court, and its order thereon will be reversed only for manifest abuse of that discretion. * * *

" 'An order, general in its terms, granting a new trial, will be upheld if it can be sustained on any ground stated in the motion therefor, and such an order will not be set aside as readily as an order denying a new trial, since the latter ends the case, whereas the former merely restores the parties to the position they occupied before the trial.' Maki v. Murray Hospital, 91 Mont. 251, 260, 7 P.2d 228, 230. To the same effect is Walsh v. Butte, Anaconda etc. R. Co., 109 Mont. 456, 97 P.2d 325. A stronger showing is required to justify interference with an order granting than one refusing a new trial. Collins v. Hodgson, 5 Cal.App.2d 366, 42 P.2d 700."

The reason for allowing such wide discretion in the trial court is aptly stated in Brennan v. Mayo, 100 Mont. 439, 448, 50 P.2d 245, 249, as follows:

"Here we are permitted to examine only the cold record,

whereas the trial judge who granted the motion for a new trial was afforded the opportunity of seeing the witnesses and of hearing them testify. He was thus better able to understand and construe the testimony in the light of the surrounding circumstances.''

In this case the order granting the new trial did not specify on which ground it was made. The rule is established that if the trial court acted within its sound discretion in ordering a new trial upon any ground stated in the motion, then its action will be upheld. Kynett v. New Mine Sapphire Syndicate, 137 Mont. 82, 350 P.2d 361.

First we will consider the ground of irregularity in the proceedings of the court which prevented a fair trial.

The facts disclosed by the affidavits in support of the motion for a new trial, and admitted by the affidavits of the defendants clearly show that there was an irregularity in the proceedings of the court. When a party to a lawsuit threatens a witness it is an understatement to say that there has been an irregularity.

Defendants apparently conceded there was an irregularity in the trial, but contend that it was not prejudicial or that the irregularity was waived. The actions of the defendant, Karen Hawks, are characterized as unpremeditated and a momentary flareup of temper and emotion which was contributed to by the acts of the plaintiff's mother.

However, tampering with a witness who is under subpoena and about to testify cannot be so lightly dismissed. Particularly where the misconduct appears to have affected the testimony of the witness.

In Ralph v. MacMarr Stores, 103 Mont. 421, 436, 62 P.2d 1285, 1291, this court quoted with approval from the case of State v. Navone, 186 Wash. 532, 58 P.2d 1208, 1211, wherein it was stated:

'' 'Misconduct is to be judged not so much by what was said or done as by the effect which is likely to flow therefrom.

What would be misconduct in one case might very well be held not to be misconduct in another. Each situation involving the question of misconduct must stand by itself and must be considered in the light of all of its facts and circumstances to the end that verdicts properly arrived at shall not be disturbed and that those verdicts which may have been induced by prejudice or by something beyond the issues shall not be allowed to stand.' ''

In this case, a party litigant was threatened by a witness, and this, in the trial court's opinion, affected the witness's testimony. This, on the cold record, may or may not have influenced the ultimate outcome of the trial. Because the misconduct was by a party to the lawsuit and because it strikes at the very fundamentals of a fair trial we do not feel disposed to speculate on the matter.

■ Considering all the circumstances we cannot say that there would be an abuse of discretion by the trial court in finding that the misconduct of the defendant was prejudicial and that it prevented a fair trial.

The next question we must consider is whether the plaintiff waived any objection to the misconduct of the defendant by failing to bring it to the court's attention by a motion for a continuance or a mistrial.

■ A long line of cases in this state has established the rule that when a party fails to make a timely objection to an irregularity in the proceedings of the court, or to bring the court's attention to the matter by a motion for a continuance or mistrial, then the irregularity is waived.

Here, we must look to the affidavits in support of the motion for a new trial and the affidavits in response thereto. The affidavits in support make what first appear to be wild charges of somewhat scandalous conduct on the part of the defendants which are advanced to excuse trial counsel from developing their partial knowledge of the restroom incident with alacrity.

The conclusions of the affidavits that Harold Hawks was possibly a dangerous and vicious man are supported by the recital of incidents of excessive drinking, wife beating, ordering plaintiff's counsel off his property, and playing a radio loudly through the heating vents of the Hansen's basement apartment to distract them. The assertions were seemingly incredible, but the defendants substantially admit all the above allegations, just attempting to minimize them.

The basic question then is whether the facts stated in the affidavits in support of the motion for a new trial, and admitted by respondents, are sufficient to excuse the plaintiff from bringing the irregularity to the attention of the court.

We do not intend to put a stamp of approval on trial tactics which have the effect of allowing a party to speculate on the verdict with error tucked in his brief case unless the verdict be favorable. In such a case, the party will be deemed to have waived the irregularity.

In Mundt v. Mallon, 106 Mont. 242, 248, 76 P.2d 326, 328, this court stated: " 'A waiver consists of the intentional relinquishment of a known right.' " 27 R.C.L. 904.

In this case, if plaintiff was unable to expose the misconduct of the defendant because of a reasonably based fear for the safety of a witness, then failure to do so is not a waiver.

The tale woven by the affidavits in support of the motion for a new trial is far from airtight. And yet on considering the admissions made by the defendants and the entire circumstances surrounding the case we cannot say it is improbable.

The trial judge had an opportunity to see in person the actors in this strange drama. He alone was in a position to judge their motives, emotions and the effects of the misconduct. We cannot say that the trial court abused its discretion manifestly such as to cause reversal of the order granting a new trial.

For the foregoing reasons the order granting a new trial is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ADAIR, JOHN C. HARRISON and DOYLE concur.