Frederick Pierce BOOTH, Appellant
(Defendant below),

v.

Wayne HACKNEY, Administrator of the Estate of John Randy Barnett, Deceased,
Appellee (Plaintiff below).

No. 4244.

Supreme Court of Wyoming.

Nov. 29, 1973.

———◆———

R. R. Bostwick of Murane, Bostwick, McDaniel, Scott & Greenlee, Casper, for appellant (defendant below).

G. L. Spence, Casper, Alan K. Simpson, Cody, for appellee (plaintiff below).

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE and McCLINTOCK, JJ.

Justice McINTYRE delivered the opinion of the court.

This case arises out of an automobile-motorcycle accident which occurred July 1, 1971 on a highway north of Basin, Wyoming. It is admitted that Dr. Frederick Pierce Booth, a dentist, was driving a pick-up truck which collided with a motorcycle, causing the death of John Randy Barnett and another youth, both of whom were on the motorcycle.

In a suit for damages, brought by the administrator of the Barnett estate,[1] the defendant, Dr. Booth, admitted liability. The issue with respect to the amount of damages was tried before a jury of 12. The jury assessed damages in the total sum of $105,000. Booth has appealed.

Although counsel for appellant has listed in his brief seven points as issues on appeal, he has indicated in oral argument that he confines the argument on appeal to two categories, i. e., (1) whether the verdict was excessive; and (2) whether there was prejudicial error in trial procedures. In order to be sure we have not neglected a consideration of all assignments of error relied on by appellant, we think we should mention and give some consideration to each of the issues on appeal listed in appellant's brief.

1. *Is the verdict contrary to law?* The only argument made on behalf of appellant in suggesting that the verdict is contrary to law is that there was no evidence of earnings of decedent (a 20-year-old boy) being applied to the survivors and no showing of projected earnings from which the jury could base any future loss to survivors. Thus, according to the argument, the only elements left for consideration by the jury were the elements of care, comfort, society and advice, together with funeral expenses.

Statutory authority, at the time of trial, for the jury to compensate for funeral expenses and for loss of the comfort, care, advice and society of the decedent, was contained in § 1–1066, W.S.1957. There is no merit in the contention that the jury's verdict was contrary to law.

2. *Is the verdict excessive?* It is settled law in this state that, before a verdict of a jury will be set aside as excessive, it must appear to be so excessive as to denote passion, prejudice, bias, or some erroneous basis. Holly Sugar Corporation v. Perez, Wyo., 508 P.2d 595, 601; Hack v. Pickrell, Wyo., 515 P.2d 134 (handed down 10/25/73); State Highway Commission v. Peters, Wyo., 416 P.2d 390, 391; Pan American Corporation v. Like, Wyo., 381 P.2d 70, 76.

Booth's attorney has made no effort to suggest or prove that passion or prejudice or bias was actually present with the jury or any of its members. Apparently it is

---

[1] Section 1–1066, W.S.1957, at times pertinent to our decision, provided that any action for wrongful death shall be brought by the personal representative of the deceased person; and the amount received in every such action shall be distributed to the parties and in the proportions provided by law, in relation to the distribution of personal estates left by persons dying intestate.

not claimed the amount awarded is excessive in dollars. It is argued that, since the entire award is for filial loss, it "may have been given under the influence of passion and prejudice."

Also, it is argued that the jury could have been led into an excessive verdict by various improper questions propounded by plaintiff's attorney. In this conection, counsel for the appellant accuses plaintiff's attorney of intentionally injecting into the case questions designed to create a passion and prejudice against the defendant on the issue of damages.

This kind of general accusation on the part of one attorney against the opposing attorney leaves the appellate court in a difficult position. According to appellant, "The direct error in this case is the composite effect of the presentation, not only an error came about, but one which was deliberately planned to be effective. It had to be. Thus any verdict whatsoever rendered by this jury is excessive and rendered under the influence of passion and prejudice."

It goes without saying that we are not bound by the opinions and conclusions of the defendant's attorney. The matter is clearly such that it should have been timely presented to the trial court for a decision and for such corrective measure or measures as the court would have deemed necessary upon proper request.

We can understand and deal with an assignment of error which says the trial court erred when it overruled an objection to certain testimony. However, if the appellant is not specific as to what his assignment of error is, and merely makes a blanket accusation of improprieties against opposing counsel, it becomes difficult, if not impossible, for the appellate court to know what error, if any, was committed by the trial court.

Our attention is not directed to any particular objection made during the course of trial where proper corrective measures were not immediately taken by the trial judge when requested. The matter was amply discussed in Ford Motor Company v. Arguello, Wyo., 382 P.2d 886, 892.

3. *Were there trial errors; and was Instruction 11 wrong?* Under point 3 of appellant's brief it is suggested there was error of law occurring at the trial; and also that the court erred in giving Instruction 11. It does not appear appellant has attached great importance to his suggestion that errors at law occurred in the conduct of the trial. All of the alleged errors have to do with the admission of evidence when plaintiff was attempting to prove damages resulting from the loss of care, comfort, advice, and society.

We have reviewed all of the alleged errors and are convinced there was no material or prejudicial error in any of the court's rulings. In particular, even if we assume without so deciding that the trial court was wrong in connection with any of the rulings complained of, there has been no showing of prejudice to the defendant.

Liability on the part of defendant was admitted and appellant has failed to show how any of the rulings complained of could have caused an excessive verdict or one greater than otherwise would have been expected. No matters of great importance are involved and it does not appear likely that the jury's verdict was substantially influenced by any of the testimony involved.

Regarding Instruction 11, the objection thereto is that it is a repetition of a *portion* of Instruction 3, overemphasizes the admission of negligence on the part of defendant, and over influences the jury with respect to damages. Throughout the trial the jury was very much aware that Booth had admitted negligence and liability and that the only question for the jury was the amount of damages. We find nothing in Instruction 11 which was likely to cause the jury to award more damages than it would have without the instruction. There is no reason to believe the instruction emphasized the defendant's admission of liability in such a manner as to increase the award of damages.

Prejudice is never presumed; and the burden is on the appealing litigant to establish prejudicial error. Robertson v. State Highway Commission, Wyo., 450 P.2d 1003, 1005. Here, appellant has done nothing more than to suggest a very remote possibility of prejudice. He has totally failed to meet the burden of showing that prejudice actually occurred.

It is true Instruction 3 informed the jury that Booth had admitted he was negligent; that his negligence caused the death of Barnett; and that Booth is liable for all damage to the Barnett survivors. The jury was therefore instructed that the sole question remaining for the jury to determine is the amount of damages which should be awarded to the administrator on behalf of the survivors.

Instruction 11 was not essentially a repetition of a portion of Instruction 3, as counsel for appellant continues to suggest. This instruction informed the jury that *the admission* by defendant of his negligence did two things: (1) It carried with it a corresponding liability for the damages of the survivors; and (2) it also removed from the jury's consideration the question of any negligence on the part of deceased who is conclusively presumed in this case to have been free from fault. Thus, it is clear that Instruction 11 performed a function not performed by Instruction 3 and the objection thereto is without merit.

4. *Was Instruction A properly refused?* On behalf of Dr. Booth Instruction A was offered as follows:

"You are instructed that the law of Wyoming provides that where a person dies intestate, that is, without a will, that as to such estate it shall descend and be distributed to his kindred, male and female, if there be no children nor their descendants, to his father, mother, brothers and sisters and brothers and sisters of the half blood in equal parts."

We consider the law of the case well expressed in Instruction 3 which has already been referred to. It clearly states, "the sole question remaining for the jury to determine in this case is the amount of damages which should be awarded the Administrator on behalf of the said survivors." When that sole question is kept in mind, it becomes apparent that there is nothing in proffered Instruction A which would have assisted the jury in its sole and only job of determining the amount of damages.

Instruction 3 informed the jury who the seven survivors of decedent were and the relationship each bore to decedent. Instruction A would have added nothing to this information. If the instruction had been given, the jury could not have used any of the information contained therein —either in its deliberations or in its determination of the total damages involved.

Moreover, if proffered Instruction A had been given, it would have been contrary to the well-established principle that a single lump-sum finding on damages suffered by heirs from wrongful death with a single lump-sum judgment is the only proper method of assessing damages; and whether it is divided among the heirs after recovery, or how it is divided, are of no concern to the jury and of no concern to the defendant.

We adopt with approval the holding of the Montana Supreme Court in State v. District Court, 139 Mont. 367, 364 P.2d 739, 741–742, to this effect: "In the event of a recovery for the wrongful death of the deceased, it is the observation of this court that the district court may then take requisite action to allocate the amount of recovery in a proper pro rata share among the surviving heirs, but it is clearly not for any jury to decide what amount should be awarded to each of the several plaintiffs in such an action."

The Supreme Court of Pennsylvania, in Ferne v. Chadderton, 363 Pa. 191, 69 A.2d 104, 107, reversed a lower court ruling on wrongful death, because the trial judge had charged that the widow was entitled to certain damages and the daughter was entitled to certain damages, with the result

that the jury assessed a specific sum in favor of the one and a specific sum in favor of the other. The applicable statute provided that the sum recovered in such an action shall go to the parties beneficially entitled thereto in the proportions in which they would take the personal estate of the decedent in case of intestacy. Therefore, the award made by the jury was not to be apportioned by them among the beneficiaries; and the Supreme Court held the award must be merely a lump sum which is then distributable as prescribed by statute.

Another good statement pertaining to this principle was made in Hill v. Arrien, U.S.D.C., E.D.Pa., 336 F.Supp. 799, 802, aff'd 3 Cir., 474 F.2d 1339. The judge in that case said all damages recovered in a survival action by the representative accrue to the estate of the deceased; and the ultimate disposition of the proceeds of any recovery is a matter to be determined later in a proper state court. The court expressly held that the ultimate distribution has no relevance in determining either liability or damages in the survival action.[2]

In light of what we have said, it is clear there was no occasion for the court to give defendant's proffered Instruction A, and there was no need to instruct concerning Wyoming law with respect to intestate persons.

■ 5. *Plaintiff's Opening Statement.* On appeal, counsel for Booth argues that counsel for plaintiff misinformed the jury with respect to the law of descent and distribution. Although opening statements

were not made a part of the record, it does appear counsel used a chart which was displayed before the jury and which suggested possible losses on the part of each relative. The appellant argues that this was erroneous and his Instruction A would have cured it.

Without deciding whether the opening statement on behalf of plaintiff was erroneous, or whether it was prejudicial, it is sufficient for us to say—and we so hold—that the defendant has waived any error in connection with the opening statement, by failing to object at the time of trial and by failing to move for a mistrial or other remedial relief during the trial.

Fleming v. Lawson, 10 Cir., 240 F.2d 119, 122, expresses the rule this way:

"Although we are of the opinion that defendant could properly have sought a mistrial after his apprehensions became a reality, no such relief was sought. Absent such a motion, it is fundamental that he cannot await the outcome of the jury's action and then claim prejudice from an unfavorable verdict."

The language used to the same effect in Herren v. Hawks, 139 Mont. 440, 365 P.2d 641, 645, was in these words:

"We do not intend to put a stamp of approval on trial tactics which have the effect of allowing a party to speculate on the verdict with error tucked in his brief case unless the verdict be favorable. In such case, the party will be deemed to have waived the irregularity." [3]

2. For other cases which hold that a single lump-sum finding on damages in a wrongful death action and a single lump-sum judgment is the only proper method of assessing damages, and whether it is divided among the heirs after recovery or how it is divided, are matters of no concern to defendants, see Rickards v. Noonan, 40 Cal.App.2d 266, 104 P.2d 839, 841–842; and Wells, Inc. v. Shoemake, 64 Nev. 57, 177 P.2d 451, 459.

3. The law applied in both the *Fleming* and *Herren* cases is not new to our court. We

have held to the same effect in a number of cases, including: Mares v. State, Wyo., 500 P.2d 530, 538; Joly v. Safeway Stores, Inc., Wyo., 502 P.2d 362, 363–364; Wright v. State, Wyo., 466 P.2d 1014, 1017; Elmer v. State, Wyo., 463 P.2d 14, 19; Valerio v. State, Wyo., 429 P.2d 317, 319; Webber v. Farmer, Wyo., 410 P.2d 807, 808–810; Edwards v. Harris, Wyo., 397 P.2d 87, 95; Ford Motor Company v. Arguello, Wyo., 382 P.2d 886, 892; and Dickey v. State, 444 P.2d 373, 375–376.

In the case we are dealing with, not only did the defendant fail to object to anything in plaintiff's opening statement, but he also failed to ask for a mistrial or any other remedial relief in connection with the opening statement.

Appellant will not be heard to complain in the appellate court about error which he claims occurred in the plaintiff's opening statement when he did not object or ask for remedial relief at the time of trial.

■ 6. *Were questions by plaintiff's counsel improper?* Booth's attorney suggests the record discloses repeated questions by plaintiff's counsel to various witnesses calculated and designed to create passion and prejudice against the defendant. The point has not been briefed or argued, and no authority has been cited, in connection with this particular assignment. We therefore need not consider the point.

7. *Motion for Mistrial.* Appellant complains because the trial court refused to grant defendant's motion for mistrial after all evidence was in and the parties had rested. The motion was predicated on the proposition that § 1-1066, W.S.1957; § 2-37, W.S.1957; and § 2-40, W.S.1957, all combined with the failure of the court to instruct as requested in Instruction A and helped to cause error.

In view of our holding that Instruction A would not have been proper; and in view of the fact that appellant has failed to argue his point 7, we need not discuss the point.

Finding no reversible or prejudicial error in connection with any of the arguments made on behalf of Booth, we hold the district court judgment must be affirmed.

Affirmed.

PARKER, Chief Justice (concurring in the result).

Inasmuch as appellant does not demonstrate that any of the points raised in the appeal are reversible error, I concur in the affirmance of the judgment.