CHRYSLER CORPORATION, a Delaware Corporation, Appellant (Defendant below),

Floyd A. Rummell, III (Defendant below),

v.

Eddie TODOROVICH, Appellee (Plaintiff below).

No. 4602.

Supreme Court of Wyoming.

June 22, 1978.

Michael J. Sullivan, of Brown, Drew, Apostolos, Barton & Massey, Casper, Glenn Parker, of Hirst & Applegate, Cheyenne, for appellant.

G. L. Spence, of Spence & Moriarity, Casper, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and CALLAHAN, D. J.*

THOMAS, Justice.

This appeal presents troublesome questions involving the duty of a manufacturer to anticipate collisions when designing and constructing automobiles, and the apportionment of damages and the application of the contribution statutes between an automobile manufacturer and the driver of a following automobile when an automobile seat breaks from the force of a rear end collision, causing an indivisible injury. These questions are unique in Wyoming, and the combination of the latter two apparently is rare in other jurisdictions. Other issues relating to the loss of elective office as a basis for establishing damages for personal injury; the denial of cross-examination of an expert witness by reference to federal standards for automobile seats; the contributory negligence of the driver who was hit from behind; the question of whether the trial court permitted trial in an atmosphere of passion and prejudice; and the proper preservation of instructional error also must receive attention in the course of this opinion.

Chrysler Corporation seeks reversal of a judgment in the amount of $400,000 which was entered in favor of Eddie Todorovich. The judgment was premised on the verdict of the jury which found Chrysler liable for personal injuries sustained by Todorovich, and assessed the amount required to compensate him for his injuries at $450,000. Those injuries were sustained when the vehicle driven by Todorovich was struck from the rear by one driven by Floyd A. Rummell, III. The trial court reduced the judgment to $400,000 because Rummell had paid $50,000 to Todorovich in settlement of Todorovich's claim against him. We conclude that prejudicial error occurred at the trial with respect to the cross-examination of the plaintiff's expert witness and testimony ascribing the loss of an elective office to the injuries sustained by Todorovich. We will reverse and remand for a new trial in accordance with this opinion.

The facts surrounding the collision and the injuries sustained by Todorovich are not complicated. On June 12, 1973, Todorovich, who then was the Sheriff of Hot Springs

---

* Judge John O. Callahan of the Second Judicial District participated in the hearing of the argument and the initial conference of the Court in this case, but because of his untimely death he did not participate in the preparation of the opinion of the Court.

County, Wyoming, was driving his 1969 Chrysler four-door automobile in a southerly direction on State Highway 130. He was accompanied by Gerald A. Stack, County Attorney for Hot Springs County, Wyoming, who occupied the right front seat. They had been traveling at speeds between 55 and 60 m. p. h., and for a number of miles had been followed by Rummell, who was driving a 1973 GMC Suburban. The distances between these two vehicles varied from 100 yards to as much as a quarter of a mile.

At a point approximately eleven miles north of Saratoga, Wyoming, Todorovich recognized a funeral procession approaching him from the south. He then was on the crest of a rise in the terrain over which the highway was built, and he slowed his vehicle, not by applying the brakes, but by permitting it to decelerate. At that time he dropped out of Rummell's sight. Rummell then was observing the funeral procession, and he did not slacken his speed. When he next observed the Todorovich vehicle it was immediately in front of him, and he struck it from the rear causing extensive damage to the vehicle and injuries to Todorovich.

The expert witness who testified about the accident for Todorovich assumed a speed differential of 20 m. p. h. between the two vehicles when the collision occurred. It was discovered that a seat bracket on the left front seat had broken, and that, because of the broken bracket the seat, in such a collision, would rotate and tilt into positions different from its normal position. The injuries sustained by Todorovich consisted essentially of a herniated disc caused by what the medical expert described as hyperextension of the lumbar spine, and in the process permanent damage resulted to nerve fibers in his spine. The experts opined that the hyperextension of the lumbar spine was more pronounced than and different from that which would have occurred had the seat bracket not failed. Stack was not injured, and in the presentation of his case Todorovich attached significance to the fact that a similar seat bracket on the seat occupied by Stack did not fail in the accident.

Todorovich's action originally was filed against Rummell. Later Chrysler Corporation was joined as a defendant. The week preceding the date set for the trial a settlement was made between Rummell and Todorovich pursuant to which Rummell agreed to pay Todorovich $50,000. The details of the settlement arrangement, beyond the amount paid and the dismissal of the Todorovich action against Rummell, are not known to us. When Chrysler learned of the settlement it proceeded to serve and file a cross-claim against Rummell. It was served by mail the Friday before the Monday on which the case was set for trial. The cross-claim actually was filed with the court on the morning the trial was scheduled to begin. The cross-claim was premised upon a claimed right by Chrysler to be indemnified, although it apparently would encompass a claimed right to contribution, in the event that Chrysler were found liable to Todorovich. Todorovich moved for dismissal of the cross-claim, and that relief was granted by the trial court. The dismissal of the cross-claim was premised upon an apparent understanding among the court and counsel for Todorovich and Chrysler that the issue of relative fault between Rummell and Chrysler would be submitted to the jury in any event.

The case then proceeded to trial with only Todorovich and Chrysler as parties. The evidence, very generally, involved the presentation of the facts surrounding the collision between Rummell and Todorovich; the manner of design and construction of the automobile seat by Chrysler; expert testimony describing an alternative and safer design and construction; and expert testimony relating to the injuries and resulting damages of Todorovich. During the cross-examination of the expert witness who testified on behalf of Todorovich with respect to the failure of the automobile seat and the alternative safer design and method of construction counsel for Chrysler attempted to inquire of the expert about Motor Vehicle Safety Standard 207 (concerning seat design standards) which was promulgated

by the Highway Traffic Safety Administration under the authority of the National Traffic Safety Administration under the authority of the National Traffic and Motor Vehicle Safety Act of 1966, 80 Stat. 718, 15 U.S.C., § 1381, et seq. The utilization of the federal standard for purposes of cross-examination was not permitted by the trial court. Furthermore, the court ruled that the standard could not be admitted as part of Chrysler's case in chief.

When Gerald A. Stack testified about the accident, he also was qualified, over the objection of Chrysler, as an expert with respect to politics in Hot Springs County, Wyoming. As an expert, he was permitted to give his opinion that Todorovich was not reelected as sheriff in Hot Springs County in the general election of 1974 because of the injuries he received in this accident. The record does not disclose proof of the salary of the sheriff of Hot Springs County.

After the evidence was closed the district judge ruled, as a matter of law, that Todorovich was not negligent in the operation of his vehicle at the time of this collision. He therefore refused to submit the issue of Todorovich's negligence to the jury under the Wyoming comparative negligence statute.[1] Among the instructions which were given to the jury were the following:

"Instruction No. 9

"This is a case which involves a theory known in the law as the 'Second Accident' concept. In a 'Second Accident' case, a manufacturer is charged with designing and manufacturing a vehicle which will not aggrevate [sic] or enhance the occupant's injuries after an intervening impact.

"Instruction No. 10

\* \* \* \* \* \*

"In ascertaining the 'purpose for which it was manufactured' or the 'intended use,' you are instructed that when a manufacturer makes automobiles for sale to the public, the law charges him, Chrysler, in this case, with knowing and foreseeing

that some of these automobiles may be involved in collisions, and the manufacturer must use reasonable care in design of an automobile with such knowledge."

\* \* \* \* \* \*

"Instruction No. 18

"You are instructed that the defendant, Chrysler, is liable if you find that the alleged manufacturer defect was one of the causes of the injury to the plaintiff, even though you also believe that the negligence of Mr. Rummell was a contributing factor in causing the accident.

"Instruction No. 19

"Any design defect not causing the accident would not subject the Defendant Chrysler to liability for the entire damage, but the manufacturer would be liable only for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design.

"Instruction No. 20

"THE COURT INSTRUCTS THE JURY that, in the jury's deliberations, the jury shall make the following determinations: What percentage of the plaintiff's injury is attributable to the negligence of Chrysler, if any, and what percentage of plaintiff's injury is attributable to the negligence of Rummel, [sic] if any.

"The jury is further instructed to fill in the following blanks opposite the names of Chrysler and Rummel [sic] to correspond to the jury's findings as to the percentage of negligence of each:

"Chrysler_____

"Rummel [sic]_____"

Todorovich successfully argued that his injuries were attributable in their entirety to negligence on the part of Chrysler in the design and manufacture of the seat bracket, and the jury found in response to Instruction No. 20, quoted above, that Chrysler was 100 per cent at fault and Rummell's fault was assessed at "0" per cent.

---

1. 1973 Wyo.Sess.Laws, Ch. 28, § 1; § 1–7.2, W.S., 1975 Cum.Supp.; now found as amended in § 1–1–109, W.S.1977.

In its brief Chrysler identifies eight issues as follows:

"1. Was Defendant Chrysler entitled to file a Cross-Claim against Rummell when, four days prior to a scheduled jury trial, Plaintiff Todorovich settled with Rummell?

"2. Was the 'Second Collision' doctrine which the Trial Court applied valid or erroneous?

"3. Did the Trial Court misconceive and misapply the law relating to proximate cause?

"4. Were not the U.S. Government's Safety Standards, which were effective at the time of the automobile's manufacture and sale, admissible in evidence and proper to be considered by the jury; and conversely, could standards which were not required by the Government and were not practiced in the industry at the time of the manufacture and sale, be invoked in the trial of this cause?

"5. Did the Court err in ruling arbitrarily that, as a matter of law, Todorovich was not negligent, either contributorily or comparatively?

"6. Was there any substantial evidence to support the verdict and particularly was not the evidence regarding reasons for loss of election damage highly speculative and loss of wages damage entirely lacking?

"7. Was the Court not required to comply with §§ 1–7.2 through 1–7.6 W.S. 1957 relating to Comparative Negligence and Contribution among joint-tort feasors and, in particular, was not the Court required (1) to enforce Plaintiff's compliance with such statutes in the trial of the case; and (2) to direct the jury to find separate special verdicts?

"8. Did not an atmosphere of passion and prejudice, contrived by Plaintiff's counsel entirely prevent a fair and impartial trial?"

Todorovich expands the issues presented by asserting in his brief that Chrysler failed to preserve the giving of the "second accident" or "enhanced injury" theory as an issue in this appeal because it did not make appropriate objection to the instructions at the time they were given by the trial court.

During the trial the theory of recovery presented by Todorovich was negligence on the part of Chrysler in designing and constructing a seat bracket which broke permitting the seat occupied by Todorovich to shift during the accident. Todorovich espoused the concept generally attributed to the decision in *Larsen v. General Motors Corporation*, 391 F.2d 495 (8th Cir. 1968) that a manufacturer is chargeable with foreseeing the involvement of his product in collisions when designing and building an automobile. Chrysler's theory to the contrary was premised upon *Evans v. General Motors Corporation*, 359 F.2d 822 (7th Cir. 1966), cert. den., 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966), the essence of which is that a manufacturer is not chargeable with foreseeing collisions in designing and constructing an automobile.

■ In this appeal under the second issue, Chrysler contends that the trial court erred in conducting the case according to a "second collision" philosophy. Because the resolution of other issues is affected by our decision with respect to this argument, we dispose of it initially. The point has been vigorously debated even though it is preserved for our consideration in only a marginal way by the record with respect to objections to the instructions. We need not pass at length on this question. The overwhelming majority rule is that a manufacturer of an automobile is charged with anticipating that the automobile will be involved in collisions with other automobiles or objects while being used for the purpose for which it was intended. Such foreseeable collisions must be taken into account in determining whether the manufacturer has met his duty as a reasonable and prudent man in designing and constructing an automobile. The manufacturer's duty is to design and construct automobiles in a reasonable and prudent manner so that failures of the parts of the automobile will not cause injuries to the occupants when a collision

occurs. The overruling of *Evans v. General Motors Corp.*, supra, by *Huff v. White Motor Corp.*, 565 P.2d 104 (7th Cir. 1977), leaves little support for the *Evans* rule. In Appendix A to *Huff v. White Motor Corp.*, supra, the court lists the 30 jurisdictions which follow the rule of *Larsen v. General Motors Corp.*, supra, which group we now specifically join. The trial court here correctly instructed the jury in this regard under the rule of *Larsen*, supra, and its progeny, and we approve the giving of an instruction similar to the language quoted above from Instruction No. 10.

█ We turn now to the contentions of Chrysler relating to the manner in which the respective responsibilities of Chrysler and Rummell were disposed of by the rulings of the trial court. The first, third, and seventh contentions submitted by Chrysler touch upon one another in this regard. Recognizing that confusion has occurred because of a label attached to a wide range of factual situations, our point of departure is that the term, "joint tort-feasor" as used in 1973 Wyo.Sess.Laws, Ch. 67, § 1; § 1–7.3, W.S., 1975 Cum.Supp., as amended, describes both Chrysler and Rummell. In view of the finding of the jury in this instance certainly the term would encompass Chrysler. The requisite liability of Chrysler, and for purposes of our discussion, Rummell, also attaches under the definition found in Restatement Torts 2d, § 431, p. 428 (1965). The record discloses negligent conduct on the part of each of them which respective conduct in each instance constituted a legal cause of the harm to Todorovich because it was a substantial factor in bringing about the harm. While not expressed in precisely this way, this is the essence of the conclusion of this court in *Convoy Company v. Dana,* Wyo., 359 P.2d 885, 887 (1961), at which point in its opinion the Court discusses joint tort feasors. See also *Pure Gas & Chemical Company v. Cook,* Wyo., 526 P.2d 986 (1974). In the context of this case Instruction No. 18 correctly expressed this concept.

█ In arguing its second and seventh contentions, Chrysler does present antithetical legal concepts. In connection with its argument that the rule of *Larsen v. General Motors Corp.*, supra, should not have been applied, Chrysler contends that in any event it must not be applied piecemeal, and urges that the instructions were defective in not explaining to the jury that the liability of the manufacturer under *Larsen*, supra, is "for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design." [2] This aspect of the *Larsen* doctrine assumes the application of a rule of apportionment to Todorovich's injuries. If apportionment can be achieved, then the contribution statutes need not be invoked because apportionment assumes that liability can be identified and attributed to Chrysler and Rummell for separate injuries, not for the same injury.

█ In its seventh contention Chrysler is complaining of the failure of the trial court to properly apply the comparative negligence statute. It is apparent that Chrysler there is relying upon the contribution statutes, but is describing both the comparative negligence statute and the contribution statutes with the words, "comparative negligence." While not a determinative point in this appeal, since the question is novel, we state our view that in a case which involves an injury that is not divisible, apportionment, even in the sense of *Larsen*, supra, cannot rationally be applied. In such an instance contribution traditionally would have been denied in Wyoming, but as of the time of the accident involved in this case contribution was made available by statute. 1973 Wyo.Sess.Laws, Ch. 67, § 1; § 1–7.3, W.S., 1975 Cum.Supp. Again we rely upon Restatement Torts, 2d,

---

**2.** This language was used by the trial court in Instruction No. 19 quoted above. While obviously not prejudicial to Chrysler, such an instruction is erroneous in a case such as this,

and should not be given if the plaintiff objects. Instruction No. 9 is objectionable for the same reason when the injury is not divisible.

§ 433A, p. 434 (1965). The injuries sustained by Todorovich are incapable of any logical, reasonable, or practical division. Since the conduct of Chrysler and that of Rummell each constituted a legal cause of the injuries sustained by Todorovich, they stand jointly and severally liable for the full extent of his injuries. *Pure Gas and Chemical Company v. Cook,* supra. To the extent that the contribution statutes permit one of them to claim against the other, they must find their remedy there. In such an instance an instruction to the effect that the manufacturer is liable only for the enhanced injury should not be given.

In this regard we would adopt the reasoning of the district court for the District of New Jersey in *Huddell v. Levin,* 395 F.Supp. 64 (D.N.J.1975), and would not follow the contrary conclusion with respect to apportionment manifested in the opinion of the United States Court of Appeals for the Third Circuit in *Huddell v. Levin,* 537 F.2d 726 (3rd Cir. 1976). In *American Motorcycle Ass'n v. Superior Court,* 20 Cal.3d 881, 143 Cal.Rptr. 692, 574 P.2d 763 (1978), the Supreme Court of California reached the proper conclusion in developing a system of equitable indemnity or contribution under the common law. The crux of our reasoning is that in view of our standard concept that juries should not be permitted to speculate (See, e. g., *Caillier v. City of Newcastle,* Wyo., 423 P.2d 653 (1967)), and in view of the usual instruction to the jury, which was given here, that the members of the jury should be uninfluenced by conjecture, we find no virtue in the adoption of a rule which requires them to speculate. Apportionment as suggested by *Larsen* and espoused by the Third Circuit in its opinion in *Huddell v. Levin,* supra, in a factual instance such as this cannot be achieved on any rational basis. Contribution is no less difficult, but the contribution statutes permit an arbitrary resolution of that difficulty.[3]

In light of our conclusion that the liability of Chrysler and Rummell must be resolved under the contribution statutes rather than the doctrine of apportionment, we hold that it was harmless error for the district court to dismiss Chrysler's cross-claim against Rummell. There is merit in the proposition urged by Todorovich that the filing of the cross-claim by Chrysler was quite late, although it does appear that Chrysler proceeded promptly upon learning of the settlement between Todorovich and Rummell. The district court well may have had discretion to refuse to permit the cross-claim to stand if that ruling were going to require a delay in a scheduled trial. There would be no prejudice to Chrysler which could still pursue any right to contribution from Rummell by independent action. Upon remand the delay factor will not be present, and the district court should permit Chrysler to pursue its cross-claim against Rummell if it chooses.

■ This requirement is dictated by the form of the Uniform Contribution statute which was in effect in Wyoming at the time of this accident. If the settlement agreement between Rummell and Todorovich provided under § 1–7.6, W.S., 1975 Cum. Supp. for a reduction of Todorovich's damages recoverable against Chrysler to the extent of the pro rata share of negligence of Rummell, then Chrysler would be entitled to a determination of Rummell's pro rata negligence and any verdict against Chrysler would have to be reduced by that amount. *Harding v. Evans,* 207 F.Supp. 852 (M.D.Pa.1962); *Raughley v. Delaware Coach Co.,* 8 Terry 343, 47 Del. 343, 91 A.2d 245 (Superior Ct.1952); *Garrison v. Navajo Freight Lines, Inc.,* 74 N.M. 238, 392 P.2d

---

3. Section 1–7.3(c):

"When there is such a disproportion of fault among joint tort-feasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tort-feasors shall be considered in determining their pro rata shares solely for the purpose of determining their rights of contribution among themselves, each remaining severally liable to the injured person for the whole injury as at common law."

As we construe this provision the trial court can distribute fault equally if there is no disproportion of fault such as to make equal distribution inequitable.

580 (1964); *Smith v. Fenner*, 399 Pa. 633, 161 A.2d 150 (1960). Cf., *M. F. A. Mutual Insurance Co. v. Mullin*, 156 F.Supp. 445 (W.D.Ark.1957). In *Swigert v. Welk*, 213 Md. 613, 133 A.2d 428 (1957), decided under a statute like the one we have, the court noted the necessity for the presence of the joint tort feasor in the case whether or not he chooses to participate in the trial, and cited and relied upon *Davis v. Miller*, 385 Pa. 348, 123 A.2d 422 (1956). Cf., *Winkler v. Balentine*, Del.Supr., 254 A.2d 849 (1969).

If, under § 1–7.5, W.S., 1975 Cum.Supp., the settlement agreement reduced the claim against Chrysler in the amount of the consideration paid by Rummell, which is the effect given it by the district court in this instance, then Chrysler would be entitled to a judgment against Rummell for the difference between the judgment of Todorovich against Chrysler and the pro rata share of Rummell based upon his negligence. Cf., *Pilosky v. Dougherty*, 179 F.Supp. 148 (E.D. Pa.1959); *Raughley v. Delaware Coach Co.,* supra; *Garrison v. Navajo Freight Lines, Inc.,* supra.

 Under Instruction No. 20 this jury said that these pro rata shares were 100 per cent for Chrysler and "0" per cent for Rummell, but that result is not acceptable as a matter of law. As we construe our contribution statutes, before submitting the question to the jury, the trial court must make a determination as a matter of law that there was such a disproportion of fault between Chrysler and Rummell as to render inequitable an equal distribution among them of their common liability by contribution. The trial court did not make such a determination in this case. If the trial court should conclude as a matter of law that there were the requisite disproportion of fault, the relative degree of fault of each of them should be considered by the jury. Instruction No. 20 was not adequate for that purpose since, as we read it, the first paragraph, asking the jury to determine what percentage of the plaintiff's injury is attributable to the negligence of Chrysler, if any, and what percentage of the plaintiff's injury is attributable to the negli-

gence of Rummell, if any, calls for apportionment, while the second paragraph would require the jury to identify the percentage of negligence of each. A zero result would be acceptable only if there were no causal connection between the conduct and the injury or if in fact one of the parties were not negligent. As a matter of law Rummell could not be excused under either of those possibilities. As a matter of fact, the expert witness for Todorovich explained that more force was generated on Todorovich's seat than there was on Stack's seat because of the angle of the collision. Therefore, the 100 and 0 percentages arrived at by the jury are not logical, and indicate that the jury ignored this testimony.

 Turning to the fourth claim of error by Chrysler, the U. S. Government's Safety Standards alluded to by Chrysler are found in Motor Vehicle Safety Standard 207, relating to seating systems and adopted under authority of the National Traffic and Motor Vehicle Safety Act of 1966, 80 Stat. 718, 15 U.S.C., § 1381, et seq. Chrysler attempted to rely upon these standards in two ways during the course of the trial. In the first instance the expert witness for Todorovich was asked whether he had taken the standards into account in connection with the design of the seat about which he had testified. A battery objection was made by Todorovich which included as one ground for objection the claim that reference to the government standards was outside the direct examination and for that reason inadmissible. This was the ground adopted by the court in sustaining the objection, i. e., that the witness did not say anything about any kind of standards on direct examination.

The record does not disclose the precise purpose of Chrysler in asking about the standards, but counsel did advise the court,

"* * * [W]e believe that it is proper cross-examination to ask him about considering Government standards, what he knows about them, whether he has just made a consideration in doing that, and at least to that extent his being ques-

tioned to that extent should be allowed. These are the things which anybody in design has to adhere to. They have to know their minimum standards which they have to meet. You can't design in automobiles without following them nor could you ignore compliance with these standards. But it is no determination of standard of care."

It appears that the questioning was designed to test the knowledge, competency and qualifications of the expert witness. Cf., *State v. Catellier*, 63 Wyo. 123, 179 P.2d 203 (1947). While not the universal rule, respectable authority justifies the utilization of standard texts and treatises, to which in this context the standards were comparable, for such purposes, and some courts hold it to be reversible error to deny this form of cross-examination. *Darling v. Charleston Community Memorial Hospital*, 33 Ill.2d 326, 211 N.E.2d 253, 14 A.L.R.3d 860 (1965), cert. den., 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966); *Jones v. Bloom*, 388 Mich. 98, 200 N.W.2d 196 (1972); *Iverson v. Lancaster*, N.D., 158 N.W.2d 507 (1968); *McCay v. Mitchell*, 62 Tenn.App. 424, 463 S.W.2d 710 (1971). See also 6 Wigmore on Evidence, § 1700, p. 25 (Chadbourn Rev. 1976); cases cited in Annotation, 60 A.L.R.2d 77, § 6, p. 98 (1958); and 2 Jones on Evidence, § 14.30, p. 667 (6th Ed. Gard 1972).

■ At this point in the trial counsel for Chrysler was confronted with the problem of cross-examination of an expert witness for the plaintiff who had stated his opinion as to the proper method of designing and manufacturing the part that failed. This testimony related the expert's standard, and it was a critical aspect of the plaintiff's proof. *Maxted v. Pacific Car & Foundry Co.*, Wyo., 527 P.2d 832 (1974). Fairness to Chrysler in such a situation demands that it be afforded reasonable opportunity to test by searching questions the knowledge, competency and qualifications of such an expert witness. In such an instance a ruling of a trial court refusing to permit cross-exami-

nation which is based upon an improper ground cannot be protected by the principle that the ruling was discretionary. The denial of an interrogation by Chrysler at this point in the trial constituted prejudicial error because it did not permit a fair opportunity to test the knowledge, competency and qualifications of the expert witness. Whatever the rule may be on cross-examining an expert witness as to the substance of his opinion testimony, the proper rule with respect to cross-examination designed to test his expertise is that it is in no way limited by his testimony on direct examination. Having offered his expert opinion the expert witness exposes himself to interrogation which ordinarily would have no place in the cross-examination of a factual witness, but the expert exposes himself to the most searching kind of investigation into his qualifications, the extent of his knowledge and the reasons for his opinion, including the facts and other matters upon which it is based. See, e. g., *Hope v. Arrowhead and Puritas Waters, Inc.*, 174 Cal.App.2d 222, 344 P.2d 428 (1959); and 2 Jones on Evidence, § 14.30, p. 667 (6th Ed. Gard 1972). The cross-examiner can raise any subject fairly designed to test his expertise whether touched upon in his direct testimony or not. We deem this a matter of importance because of our recent adoption of the Wyoming Rules of Evidence which makes opinion evidence much more available in trials than it may have been heretofore.

■ Chrysler also asserts error in the refusal of the trial court to admit the standards in evidence as part of its case in chief. We do not know the particular basis of the court's ruling excluding the standards at that juncture,[4] but a focal point of the argument was that the standards had not been listed as an exhibit in accordance with the order entered upon the pre-trial conference in accordance with Rule 16, W.R.C.P. This same suggestion was made in connection with the objection to the utilization of the standards on cross-examina-

---

4. The admissibility of these standards in the case in chief is supported by *McComish v.*

*DeSoi*, 42 N.J. 274, 200 A.2d 116 (1964) and the authorities there cited.

tion. The exclusion of the standards as part of Chrysler's case in chief was within the discretion of the trial court to require adherence to its pre-trial order and for that reason did not constitute error. *Ford Motor Co. v. Kuhbacher,* Wyo., 518 P.2d 1255 (1974). We do, however, add a caveat that evidence relied upon for purposes of cross-examination or rebuttal must be treated differently for purposes of Rule 16, W.R. C.P. and orders entered thereunder from evidence relied upon by a party for use in the case in chief. While it may be apparent that evidence is going to be required for purposes of cross-examination or rebuttal, that would not always be so, and if it would otherwise be properly admissible the court should be cautious in making discretionary rulings to exclude the cross-examination or rebuttal evidence on the ground that it was not disclosed prior to trial.

Reversible error also occurred in connection with the evidence complained of in Chrysler's sixth contention concerning damages. When Gerald A. Stack testified for the plaintiff he was examined with respect to his participation in and observance of political affairs in Hot Springs County. He was then asked whether he had an opinion based upon his experience and knowledge of political activities as to why Todorovich lost the election. Stack stated he did have such an opinion, and at that juncture an objection was lodged on behalf of Chrysler to the effect that there was not sufficient foundation for the witness to render such an opinion. In connection with the argument on this objection the court inquired about authority permitting an expert to testify in this area. No authority was offered, and the trial court overruled the objection as to foundation. Whereupon Stack gave his opinion that Todorovich was defeated because of a feeling by the electorate that his health was too poor or was not good enough for him to be able to serve as sheriff. The effect of Stack's testimony was that Todorovich had lost this election because of the injuries sustained in the accident which is the subject matter of this lawsuit. Counsel for Todorovich deftly followed this advantage through the testimo-

ny of a psychiatrist who explained that Todorovich suffered special psychological damages because he had lost the office of sheriff due to these injuries. In closing argument counsel included a specific amount relating to the loss of wages as a sheriff.

■■■■■■ The general rule in Wyoming is that remote, uncertain and conjectural or speculative damages are not allowed. *Opheim v. United Mobile Homes, Inc.,* Wyo., 511 P.2d 1289 (1973). In *State ex rel. Willis v. Larson,* Wyo., 539 P.2d 352 (1975) we held that the fact of a future election prevented a candidate for office from claiming as damages the loss of the salary for the four-year term. The wrongful conduct asserted there was the refusal of the county clerk to permit filing for public office. Other courts have applied this same rule, for the same reasons, to the loss of an election or loss of salary in public office in actions where the wrongful conduct was libel. *Southwestern Publishing Co. v. Horsey,* 230 F.2d 319 (9th Cir. 1956); and *Otero v. Ewing,* 162 La. 453, 110 So. 648, 56 A.L.R. 249 (1926). There is no justification for applying a different rule in an instance in which the tortious conduct is negligence resulting in personal injuries, and we hold that it was plain and prejudicial error to permit the testimony of Stack in this regard.

Chrysler complains also that there was no evidence permitting the jury to find the amount of sheriff's wages. This point becomes moot in view of our holding that such wages were not a proper element of damages because such damages were speculative. We do note, however, that there was no offer of an instruction or any statute which as a matter of evidence would have communicated this fact to the jury. It was presented only through argument of counsel for Todorovich, and technically, Chrysler's contention is correct that there was a failure of proof. Todorovich suggests that judicial notice would cure any such defect, but that is simply a technique of proof which was not pursued in this case.

██ Chrysler further asserts that the trial court erred in ruling "as a matter of law that Mr. Todorovich was not negligent." Chrysler argues that Todorovich was negligent in slowing in the one lane of traffic on a two lane highway without keeping watch for the vehicle behind him and without giving a signal, and further, that he took no steps to avoid the accident. Chrysler also complains of a ruling by the trial court to the effect that no reference could be made of Todorovich's nonuse of seat belts. We previously have ruled that it is prejudicial error to give instructions on contributory negligence if the defense of such negligence is not supported by substantial evidence. *Gish v. Colson*, Wyo., 475 P.2d 717 (1970). The same rule would apply with respect to the negligence of a plaintiff in a comparative negligence context. The only evidence pertaining to this issue is testimony that Todorovich reduced his speed upon meeting a funeral procession. The collision occurred 1,500 feet beyond a slight rise in the highway. Rummell lost sight of the Todorovich vehicle as it went over the rise and, when, after watching the string of cars in the funeral procession, he turned his attention back to the road the Todorovich vehicle was about 10 to 15 feet in front of him. Todorovich had reduced his speed from approximately 55 m. p. h. to approximately 25 to 30 m. p. h.

In *Kahler v. Martin*, Wyo., 570 P.2d 720 (1977), we adopted the rule that ordinarily the question of negligence in a collision involving leading and following vehicles is a question of fact for the jury, but we did recognize the exception to that rule when the evidence is undisputed and subject to but one reasonable inference, or is legally insufficient to raise a question of fact for the jury. Given the facts of this situation the reduction of speed by Todorovich is not substantial evidence of negligence, and there is no other evidence except that which is to be inferred from the silence of the record. We hold that the trial court ruled correctly in refusing to submit the question of Todorovich's negligence to the jury insofar as the operation of his motor vehicle was concerned.

██ With respect to the seat belt question, the record does not preserve this issue for our consideration. It discloses that no offer of proof was submitted by Chrysler Corporation to inform the district court of the purpose for seeking to educe such testimony. We note a majority rule suggested by the cases cited in Annotation, 15 A.L. R.3d 1428 (1967), that such evidence is not admissible with the possible exception of mitigation of damages. In the absence of an offer of proof in this instance the trial court could not determine whether this testimony was offered as evidence of Todorovich's negligence or for the purpose of mitigating damages. Under those circumstances the ruling of the trial court in refusing to admit this evidence must be sustained. *Truck Terminal, Inc. v. Nielsen*, 80 Wyo. 223, 339 P.2d 413 (1959); *Watson v. Klindt*, 73 Wyo. 402, 280 P.2d 282 (1955); *Cooley v. Frank*, 68 Wyo. 436, 235 P.2d 446 (1951); *Wyoming Inv. Co. v. Wax, et ux.*, 45 Wyo. 321, 18 P.2d 918 (1933).

██ In its eighth claim of error Chrysler argues that the trial judge permitted the trial to be conducted in an atmosphere of passion and prejudice which Chrysler claims was contrived by plaintiff's counsel to prevent a fair and impartial trial. Instances of improprieties are called to the attention of the court, but it does not appear that proper objection was made or that a ruling was insisted upon. Various aspects of this point have been before this Court on many occasions. The uniform disposition has been that there must be a proper objection made to conduct of counsel, and in each instance of impropriety. If that is not done then complaint about the matter on appeal is not countenanced. The substance of this rule and the reasons therefor are set forth in a number of decisions of this Court. E. g., *Booth v. Hackney*, Wyo., 516 P.2d 180 (1973); *Joly v. Safeway Stores, Inc.*, Wyo., 502 P.2d 362 (1972); *Logan v. Pacific Intermountain Express Co.*, Wyo., 400 P.2d 488 (1965); *Edwards v. Harris*, Wyo., 397 P.2d 87 (1964); and the other cases cited in these opinions.

For the reasons set forth above, this judgment is reversed and the case is remanded for a new trial in accordance with the views set forth herein.